(176 P.3d 203)
No. 96,210

STATE OF KANSAS, *Appellee,* v. EDWARD N. COBURN, SR.,
*Appellant.*

Opinion filed February 1, 2008.

*Janine Cox*, of Kansas Appellate Defender Office, for appellant.

*Renee S. Henry* and *Robbin Wasson*, assistant district attorneys, *Jerome A. Gorman*, district attorney, and *Paul J. Morrison*, attorney general, for appellee.

Before BUSER, P.J., GREEN and CAPLINGER, JJ.

GREEN, J.: Edward N. Coburn, Sr., appeals from his convictions at a jury trial of six counts of aggravated indecent liberties with a child in violation of K.S.A. 21-3504(a)(3)(A) and one count of sexual exploitation of a child in violation of K.S.A. 1998 Supp. 21-3516(a)(2). First, Coburn contends that the trial court erred in denying his motion to sever his charge of sexual exploitation of a child from the six counts of aggravated indecent liberties with a child. We agree. Under K.S.A. 22-3202(1), the legislature has set out three alternative conditions precedent (same or similar character; same act or transaction; or two or more acts or transactions connected together or constituting parts of a common scheme or plan) which must be met before a trial court may exercise its discretion to allow the joinder of charges. Because none of the conditions precedent under K.S.A. 22-3202(1) were met in this case, the charges should not have been joined as a matter of law. Further, the misjoinder of charges did not constitute harmless error because the highly inflammatory evidence used to prove the charge of sexual exploitation of a child was sufficiently prejudicial to deny the defendant a fair trial. Accordingly, we reverse Coburn's convictions and remand for separate trials.

Next, citing *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 152 L. Ed. 2d 403, 122 S. Ct. 1389 (2002), Coburn argues that K.S.A. 1998 Supp. 21-3516 is unconstitutional under the First and Fourteenth Amendments to the United States Constitution because it criminalizes the possession of simulated nude exhibitions of a person under the age of 18. We disagree. The simulated nude exhibition language of K.S.A. 1998 Supp. 21-3516(b)(1) does not render the statute unconstitutional under *Ashcroft*.

Finally, Coburn contends that there was insufficient evidence to convict him of the charges of aggravated indecent liberties with a child and sexual exploitation of a child. We disagree. After reviewing the evidence in the light most favorable to the prosecution, we

conclude that a rational jury could have found the defendant guilty beyond a reasonable doubt.

In July 2001, Coburn was convicted by a jury of six counts of aggravated indecent liberties with a child and one count of sexual exploitation of a child. The aggravated indecent liberties charges were based on Coburn's lewd fondling or touching of S.W. (date of birth 06-29-89) and J.W. (date of birth 08-26-86) between November 1998 and March 2000. J.W. and S.W. are sisters and the grandchildren of Rose Coburn. Rose was Edward Coburn's girlfriend and later became his wife. The sexual exploitation charge was based on Coburn's possession of pictures on a computer depicting a child under 18 years of age engaging in sexually explicit conduct.

On appeal, this court reversed and remanded for a new trial, determining that the jury instruction that Coburn's flight could be considered in determining guilt was clearly erroneous. See *State v. Coburn*, 32 Kan. App. 2d 657, 87 P.3d 348, *rev. denied* 278 Kan. 848 (2004). Before the new trial, Coburn moved to sever the charge of sexual exploitation of a child from the six counts of aggravated indecent liberties with a child. The trial court denied Coburn's motion to sever, determining that the charge of sexual exploitation of a child was of a similar character to the other charges.

At the new trial, J.W. testified that she met Coburn in the summer of 1998 when she and S.W. went to visit their grandmother, Rose, in Maryland. While J.W. and S.W. were staying with Rose, Coburn would wrestle with them and tickle them. J.W. testified that Coburn would tickle their stomachs and then move his hand lower. S.W. testified that Coburn touched her vaginal area under her clothes. J.W. testified that Coburn touched her vagina once while she was visiting Rose in Maryland. According to J.W., this incident occurred around Thanksgiving 1998.

Coburn and Rose moved to Kansas around October 1998 and lived with J.W., S.W., and C.W., J.W. and S.W.'s mother, for several weeks. J.W. testified about an incident that occurred in the living room of her house on Thanksgiving day. J.W. testified that Coburn tackled her to the floor, straddled her, and held her hands

above her head. J.W. testified that no inappropriate touching occurred at that time but that Coburn's conduct came close to inappropriate. Nevertheless, when interviewed by a social worker in April 2000, J.W. indicated that Coburn had touched her inappropriately during the incident at her house on Thanksgiving 1998.

Coburn testified that he and Rose moved into their own house around December 1998. The house was located approximately 2 blocks away from where J.W. and S.W. lived. J.W. testified about another incident that occurred in the basement of Rose's house. According to J.W., Coburn straddled her and attempted to put his hand into her pants. J.W. testified that Coburn rubbed her upper thigh on the outside of her clothes within an inch of her vagina.

J.W. initially testified that she did not remember Coburn touching her vagina after he moved to Kansas. Nevertheless, the prosecutor reminded J.W. of her testimony at a previous hearing where she had stated that Coburn had touched her vagina in the basement of Rose's house in Kansas. The prosecutor gave J.W. a minute to think about whether Coburn actually touched her vagina at Rose's house. J.W. then testified that she remembered Coburn touched her vagina under her clothes in the basement of Rose's house in Kansas.

Based on J.W.'s testimony at the new trial, Coburn touched her vagina once in Maryland and once in Kansas. During her interview in April 2000, however, J.W. named several touching incidents that occurred after Coburn moved to Kansas, including one at Thanksgiving, one at Christmas, two during slumber parties at her grandmother's house, and three or four other incidents.

S.W. testified that Coburn inappropriately touched her twice in the living room and once in the basement at Rose's house in Kansas. S.W. testified that she also saw Coburn inappropriately touch J.W. S.W. described an incident that occurred in the living room of Rose's house in Kansas City. According to S.W., Coburn had his arms around both S.W. and J.W. and was touching both of their "private parts."

L.C., who was J.W.'s best friend, testified that J.W. had told her that Coburn would try to touch her chest and private areas. According to L.C., she had seen Coburn try to slide his hand into the girls' shirts or pants when they were wrestling. D.F., who was a

friend of S.W., also testified that S.W. had told her that Coburn had tried putting his hands into S.W.'s clothes.

C.W. testified that about a month after Coburn moved to Kansas, S.W. and J.W. became uncomfortable being around Coburn. S.W. later told her mother, C.W., about the touching incidents. C.W. questioned J.W. about whether Coburn had touched her inappropriately. At first, J.W. repeatedly denied that Coburn had touched her inappropriately. Nevertheless, J.W. eventually told her mother about the touching incidents. C.W. filed police reports about the incidents.

On the morning of March 19, 2000, Coburn stole over $10,000 from a safe at a grocery store where he worked as the assistant manager. Coburn left a note for Rose, stating that he had done nothing wrong to S.W. or J.W. Nevertheless, Coburn stated that he was living on borrowed time and that he was going to have fun with the money during the last years of his life. Coburn was later arrested in Las Vegas and brought back to Kansas.

After learning that Coburn had taken the money from the grocery store and left town, C.W. went with her husband and her husband's friend to Rose's house to attempt to determine where Coburn might have gone. While looking on the computer at Rose's house, they discovered an Amtrak train schedule. Moreover, as they were looking at the different sites that Coburn had visited, they saw what appeared to be child pornography. C.W. called the police. The computer was seized by the Kansas City, Kansas, Police Department and was sent to the Federal Bureau of Investigation (FBI).

After copying the hard drive of the computer to disc, Brian Poole, a forensic examiner with the FBI, ran forensic programs on the copy. Poole discovered numerous pornographic web sites on the history of the computer. Poole testified that the earliest date in the history of the computer was January 7, 1994, and that the next date was February 10, 2000. In the "My Documents" folder of the computer, Poole found various graphic files and a web page from a site with young virgins in photographs that appeared to be child pornography. Allison Rodriguez, who worked for the FBI on child exploitation cases, testified that the sites visited on the com-

puter were known for child pornography. Evidence presented at trial revealed that these sites had been visited on dates when Coburn was living in Rose's house. Rodriguez testified that Coburn's name was on the Internet account found on the computer.

Rose testified that they bought the computer at a yard sale after she and Coburn moved to Kansas. Rose testified that she did not use the computer. C.W., S.W., and Rose testified that Coburn was "always" on the computer. J.W. testified that no one else used the computer besides Coburn. Neither S.W. nor J.W. ever saw what Coburn was looking at on the computer. Whenever they would go downstairs, Coburn would turn the screen away from them or turn it off. The computer had been in the spare bedroom, the garage, and the basement of Rose's house.

At trial, Coburn testified that although he had visited adult pornography sites, he had never visited child pornography sites. Further, Coburn denied ever molesting J.W. or S.W.

The jury convicted Coburn of all six counts of aggravated indecent liberties with a child and the one count of sexual exploitation of a child. Coburn was sentenced to 228 months in prison.

*I. Motion to Sever*

First, Coburn argues that the trial court erred by denying his motion to sever the count of sexual exploitation of a child from the other six counts of aggravated indecent liberties with a child.

The purpose of joining in one complaint, information, or indictment more than one charge is to promote economy and efficiency. K.S.A. 22-3202(1) permits the joinder of charges under the following circumstances:

"Two or more crimes may be charged against a defendant in the same complaint, information or indictment in a separate count for each crime if the crimes charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

As a result, the State may join in one complaint, information, or indictment more than one charge when the offenses are linked, either in terms of (1) consisting of the same or similar character,

(2) arising out of the same act or transaction, or (3) composing of two or more acts or transactions connected together or constituting a common scheme or plan.

In *State v. Gaither*, 283 Kan. 671, Syl. ¶ 4, 156 P.3d 602 (2007), our Supreme Court recently set forth the standard to be applied when reviewing the joinder of charges under K.S.A. 22-3202(1). An appellate court must first determine which of the three alternative conditions precedent the trial court relied on under K.S.A. 22-3202(1): (1) same or similar character; (2) same act or transaction; or (3) two or more acts or transactions connected together or constituting parts of a common scheme or plan. Next, the appellate court must determine whether there is substantial competent evidence to support the trial court's findings of fact, using a deferential standard. The appellate court then determines whether the trial court properly concluded that a condition precedent has been met, using a de novo standard. Once the trial court makes a legal determination about whether one of the conditions precedent apply, K.S.A. 22-3202(1) gives the trial court discretion to decide whether to join the charges. An appellate court reviews the final decision on joinder of the charges for abuse of discretion. *Gaither*, 283 Kan. at 685.

### A. Consisting of the Same or Similar Character

With this understanding, it is appropriate to focus on which condition precedent the trial court relied on under K.S.A. 22-3202(1). In denying Coburn's motion to sever, the trial court specifically found that the sexual exploitation charge was of a similar character to the aggravated indecent liberties charges. Thus, the trial court relied on the "same or similar character" condition precedent of K.S.A. 22-3202(1).

In *State v. Barksdale*, 266 Kan. 498, 507, 973 P.2d 165 (1999), our Supreme Court discussed the determination of whether crimes are of the same or similar character to permit joinder:

"This court has on numerous occasions throughout its history addressed the subject of whether crimes are of the same or similar character so as to permit their joinder. In *State v. Hodges*, 45 Kan. 389, 392, 26 Pac. 676 (1891), we stated:

'Several separate and distinct felonies may be charged in separate counts of one and the same information, where all of the offenses charged are of the same general character, requiring the same mode of trial, the same kind of evidence, and the same kind of punishment. [Citations omitted.]' "

The *Barksdale* court noted that this standard had been reiterated many times by our Supreme Court. 266 Kan. at 507.

Nevertheless, citing *State v. Thompson*, 139 Kan. 59, 61-62, 29 P.2d 1101 (1934), our Supreme Court in *Barksdale* noted that it had warned against relying solely on generalities when considering whether joinder was proper:

" 'That offenses must be of the same general character is not always a sound test of joinder. In this instance the two crimes charged were of the same general character, in that they both involved force and violence to the person. That, however, would not necessarily be sufficient. To illustrate: As the culmination of a long-standing quarrel about a line fence, a farmer kills his neighbor. He goes to town, and the same afternoon, while in an excited frame of mind, he becomes involved in an altercation about a business matter, and makes an assault with some kind of deadly weapon with intent to kill. While the offenses are of the same general character, there should be separate informations and separate trials. The only reason that is so is, there would inevitably be some jumbling of the two cases at the trial, which would tend to prevent that concentrated consideration of each case which is indispensable in matters of such gravity.' " 266 Kan. at 508.

Here, the trial court made no findings relating to how the sexual exploitation of a child crime and the aggravated indecent liberties with a child crimes were of a same or similar character. Nevertheless, Coburn never objected to the trial court's lack of factual findings on this issue. When a party does not object to the lack of factual findings before the trial court, an appellate court presumes that the trial court made the factual findings necessary to support its decision. *Gaither*, 283 Kan. at 686. As a result, this court can proceed directly to the legal conclusion regarding whether the crimes were of the same or similar character under K.S.A. 22-3202(1). See 283 Kan. at 686.

Viewing the record in the light most favorable to the State, the similarities among all of the crimes in this case were that they involved minors, that they involved sex offenses, that they allegedly involved sexual gratification, that they were of a lewd nature, and

that some of the crimes were alleged to have occurred at Coburn's residence. Nevertheless, the similarities seem to stop there.

Kansas sex offense laws are similar to those found in most states. Rape, sodomy, sexual battery, and indecent liberties with a child are the primary sex offenses. Further, these sex offenses can be broken down into three main categories: (1) sexual intercourse, (2) sodomy, and (3) touching. Coburn's offense of sexual exploitation of a child does not fit within any of these categories. Moreover, Coburn's sexual exploitation charge and aggravated indecent liberties charges are not similar in character.

To illustrate, the offenses involved very different victims: the children involved in the aggravated indecent liberties charges were not the same children depicted in the images involved in the sexual exploitation charge. Further, the aggravated indecent liberties charges involved specific child victims. The same was not true for the sexual exploitation charge. Because this charge involved pornography, society is generally considered the victim of this type of crime. See *Miller v. California*, 413 U.S. 15, 24, 37 L. Ed. 2d 419, 93 S. Ct. 2607, *reh. denied* 414 U.S. 881 (1973) (applying contemporary community standards in determining whether material is pornographic).

Moreover, the victims were not treated similarly. The aggravated indecent liberties with a child charges are assaultive offenses. On the other hand, the sexual exploitation of a child charge is a possession of contraband offense. This offense is concerned with the possession of pornographic computer images. Unlike the aggravated indecent liberties charges, the sexual exploitation charge did not involve any inappropriate touching of the victims.

Further, the severity level of aggravated indecent liberties charges was driven by the nature of the acts involved and the ages of the victims. The same was not true for the sexual exploitation charge. The sexual exploitation charge involved images of children under the age of 18 while the aggravated indecent liberties charges involved children under the age of 14.

Moreover, the evidence necessary to prove the sexual exploitation charge and the aggravated indecent liberties charges was different. Although the State points out that some of the witnesses

were the same for all of the charges, there was no real overlapping of proof for the sexual exploitation charge and the aggravated indecent liberties charges. In other words, when proving the sexual exploitation charge, the State's proof did not constitute a substantial proof of the aggravated indecent liberties charges or vice versa. Specifically, the child victims of the aggravated indecent liberties charges and their family members established that Coburn spent a lot of time on the computer and was the only person who accessed it. These witnesses' testimony, however, related only to a small portion of the State's case on the sexual exploitation charge and was different from their testimony relating to the aggravated indecent liberties charges. Moreover, we doubt that the State needed the child victims' testimony to establish Coburn's computer usage.

Consequently, the State could prove the sexual exploitation charge without using any of the evidence needed to prove the aggravated indecent liberties charges. The aggravated indecent liberties charges were proved through the testimony of the child victims and those individuals whom they told about the incidents. On the other hand, the sexual exploitation charge required testimony from an FBI forensic examiner and an FBI agent working in child exploitation cases about the images found on the computer, the web sites that had been visited, and the history of the computer.

As a result, the proof of the sexual exploitation charge depended on a different set of facts from the set of facts needed for proof of the aggravated indecent liberties charges. In short, the sexual exploitation charge depended on different evidence for its proof than the evidence needed for proof of the aggravated indecent liberties charges. As stated earlier, charges of the same or similar character may be joined in the same information when "all of the offenses charged are of the same general character, *requiring* the same mode of trial, *the same kind of evidence,* and the same kind of punishment." (Emphasis added.) *Barksdale,* 266 Kan. at 507. Here, the same kind of evidence requirement under the same or similar character condition was not met.

Finally, the sexual exploitation charge and the aggravated indecent liberties charges do not belong to the same class of crimes. The possession of pornographic computer images of minors is a

crime distinct from the inappropriate touching of minors. As a result, the crimes were not of the same general type. This leads to the legal conclusion that the charges were not of a sufficiently similar character to warrant joinder under K.S.A. 22-3202(1). As a result, the trial court erroneously determined that the "same or similar character" condition precedent under K.S.A. 22-3202(1) applied.

### B. Composing of Two or More Acts or Transactions Connected Together or Constituting Parts of a Common Scheme or Plan

Although not explicitly stated in its ruling, the trial court also seemed to rely on the "connected together" language of K.S.A. 22-3202(1). The trial court found that the pictures had been found on the computer when C.W. was trying to determine where Coburn might have fled. These findings are supported by substantial competent evidence in the record. We must now determine, using a de novo review, whether those findings fit the "two or more acts or transactions connected together or constituting parts of a common scheme or plan" condition precedent of K.S.A. 22-3202(1). See *Gaither*, 283 Kan. at 685.

In *State v. Donaldson*, 279 Kan. 694, 699, 112 P.3d 99 (2005), our Supreme Court stated that it had broadly construed the connected together language of K.S.A. 22-3202(1) to apply in three situations. The first situation occurs when the defendant provides evidence of one crime while committing another. This situation is illustrated by *State v. Anthony*, 257 Kan. 1003, 898 P.2d 1109 (1995), where during a drug sale to an undercover officer the seller bragged about a murder and robbery. Our Supreme Court in *Anthony* held that the crimes were connected together by the incriminating statements made during the drug sale. 257 Kan. at 1016-17. Coburn never provided evidence of the sexual exploitation crime while committing the aggravated indecent liberties crimes. Conversely, Coburn never provided evidence of the aggravated indecent liberties crimes while committing the sexual exploitation crime.

The second situation where our Supreme Court has found charges to be connected together under K.S.A. 22-3202(1) occurs

when some of the charges are precipitated by other charges. *Donaldson*, 279 Kan. at 699. Examples of this situation can be found in *State v. Dreiling*, 274 Kan. 518, 54 P.3d 475 (2002), and *State v. Pondexter*, 234 Kan. 208, 671 P.2d 539 (1983). In *Dreiling*, our Supreme Court affirmed the joinder of first-degree premeditated murder and conspiracy to commit murder with conspiracy to commit perjury because the perjury would have prevented evidence of the defendant's motive for murder. 274 Kan. at 555. In *Pondexter*, our Supreme Court held that the charges of unlawful possession of a firearm and aggravated assault of a law enforcement officer were properly consolidated with charges of burglary and attempted murder because the intended murder victim was a witness against the defendant for the first two charges. 234 Kan. at 216-17. The instant case is not similar to the circumstances present in either *Dreiling* or *Pondexter*. Moreover, there is no showing in the record that Coburn's sexual exploitation charge was precipitated by his aggravated indecent liberties charges or vice versa.

The third situation where our Supreme Court has found charges to be connected together under K.S.A. 22-3202(1) occurs when all of the charges stem from a common event or goal. *Donaldson*, 279 Kan. at 700. Examples of this situation are found in *State v. Simkins*, 269 Kan. 84, 3 P.3d 1274 (2000), and *State v. Stewart*, 219 Kan. 523, 548 P.2d 787 (1976), *overruled on other grounds State v. Fortune*, 236 Kan. 248, 689 P.2d 1196 (1984). In *Simkins*, our Supreme Court affirmed the joinder of first-degree murder and domestic battery charges against two victims because both charges resulted from the victims' previous extramarital affair and the defendant's observation of the victims talking together. 269 Kan. at 91. In *Stewart*, our Supreme Court upheld the joinder of the charge of aggravated battery against Sanders and the charge of aggravated robbery against Sander's wife because both crimes were based on the defendant's goal of getting Sanders to repay a debt. 219 Kan. at 528. Here, the State presented no evidence that Coburn committed the crime of sexual exploitation of a child based on a common event or goal such as that present in *Simkins* and *Stewart*.

The State contends that all of the charges against Coburn involved one basic scheme. Under K.S.A. 22-3202(1), crimes may be joined if they are based on two or more acts or transactions "constituting parts of a common scheme or plan." Nothing presented at trial, however, showed that the child pornography discovered on Coburn's computer was part of his scheme or plan in committing the aggravated indecent liberties crimes. The child pornography was not used during the aggravated indecent liberties acts. This shows that Coburn did not use the pornographic images to entice J.W. and S.W. into submitting to his alleged illegal acts with them. Moreover, J.W. and S.W. never even saw Coburn looking at pornography on the computer. As a result, the sexual exploitation crime was not used to carry out the aggravated indecent liberties crimes.

In summary, the State presented no evidence that the sexual exploitation charge was connected with any act based on the aggravated indecent liberties charges, nor did the State show that the crimes were based on a common scheme or plan. Therefore, we conclude, as a matter of law, that the "two or more acts or transactions connected together or constituting parts of a common scheme or plan" condition precedent under K.S.A. 22-3202(1) has not been met here.

## C. Arising out of the Same Act or Transaction

The remaining condition precedent under K.S.A. 22-3202(1) is the "same act or transaction." The trial court never addressed this condition precedent. Moreover, the State makes no argument that this condition precedent applies. In addition, the record shows that the sexual exploitation charge and the aggravated indecent liberties charges did not arise out of the same act or transaction. Therefore, this condition precedent was not met.

Based on the above analysis, none of the conditions precedent under K.S.A. 22-3202(1) were met in this case to allow the joinder of charges. When a joinder occurs and none of the conditions precedent under K.S.A. 22-3202(1) have been met, this is prohibited not as a possible abuse of discretion by the trial court, but as a matter of law. *Gaither*, 283 Kan. at 685. Therefore, as a matter of

law, the aggravated indecent liberties charges should not have been joined with the sexual exploitation charge under K.S.A. 22-3202(1).

### D. Prejudice

Moreover, when a misjoinder of charges has occurred, some prejudice almost always results. In other words, when joinder is improper, some prejudice is shown from the very fact of the joinder. See *King v. United States*, 355 F.2d 700, 704 (1st Cir. 1966) ("[T]o try a single defendant for more than one offense involves prejudice.").

Nevertheless, in *State v. Bunyard*, 281 Kan. 392, 402, 133 P.3d 14 (2006), our Supreme Court quoted *United States v. Lane*, 474 U.S. 438, 449, 8 L. Ed. 2d 814, 106 S. Ct. 725 (1986), for the rule that "error due to misjoinder requires reversal only if the error had a 'substantial and injurious effect or influence in determining the jury's verdict.' "

Coburn argues that the evidence presented for the sexual exploitation charge was prejudicial to his defense. Coburn maintains that the jury was likely to conclude that because he visited and viewed pornographic sites, he must be someone who molests children. Coburn's argument has merit. The misjoinder in this case may have prejudiced Coburn in one or more of the following ways:

### 1. Inference of Criminal Disposition

In proving the charge of sexual exploitation of a child, the State introduced into evidence several images of child pornography that had been found on the computer. The State also introduced an extensive history of various pornographic web sites, including child pornographic web sites, that had been visited on the computer. This evidence would have been very prejudicial to Coburn's defense of the aggravated indecent liberties with a child charges. Such evidence could have led jury members to conclude that because Coburn possessed lewd pictures of young girls, his criminal disposition was to commit other lewd crimes against young girls. For example, the State argues in its brief that "[t]he photos and websites accesses also go toward Coburn's intent in touching the girls." The State's argument carries a strong inference that it used the

child pornography images to show to the jury that Coburn was predisposed to commit the aggravated indecent liberties charges.

Although the jury in this case was instructed that it must decide each charge separately on the evidence and the law applicable to it, uninfluenced by its decision as to any other charge, " 'there would inevitably be some jumbling of the two cases at the trial, which would tend to prevent that concentrated consideration of each case which is indispensable in matters of such gravity.' " *State v. Barksdale*, 266 Kan. 498, 508, 973 P.2d 165 (1999). Indeed, as we will show later, the State was bent on scrambling the evidence in these cases to its advantage. Consequently, the jury could have considered the evidence of sexual exploitation of a child as corroborative of the aggravated indecent liberties charges, which would have resulted in an adverse influence on the jury's verdicts.

### 2. K.S.A. 60-455

Although joinder is not dependent upon whether separate charges can meet the admissibility test under K.S.A. 60-455, a K.S.A. 60-455 analysis is a relevant tool to use in determining whether prejudice results from the joinder of the charges. For example, when prior crimes evidence is not logically and legally relevant to prove some material fact listed in K.S.A. 60-455 or some other material fact not listed in the statute, the prejudicial consequences of such evidence weighs heavily against its admission into evidence. See *State v. Gunby*, 282 Kan. 39, 48, 144 P.3d 647 (2006) ("[W]e have recognized at least three types of prejudice can follow the admission of other crimes and civil wrongs evidence."). Our discussion of K.S.A. 60-455 begins and ends with the idea that it affords a mode for analyzing whether a defendant has been prejudiced by an improper joinder of charges.

This is vividly illustrated by *State v. Cromwell*, 253 Kan. 495, 511-12, 856 P.2d 1299 (1993). In *Cromwell*, our Supreme Court analyzed K.S.A. 60-455 to determine if a defendant had been prejudiced by joinder of charges. The *Cromwell* court held that no prejudice resulted to the defendant when evidence of one charge would have been admissible under K.S.A. 60-455 in the trial of the other charge. 253 Kan. at 512. In *Barksdale*, our Supreme Court

adopted the rule from *Cromwell*: "[W]here the evidence of crimes joined for trial would have been admissible under K.S.A. 60-455 in a separate prosecution, the defendant is unable to demonstrate any prejudice when the crimes are tried in a single trial. [Citation omitted.]" 266 Kan. at 510. Inversely, this rule implies that a defendant may be *able* to show prejudice when improperly joined crimes are tried in a single trial and the evidence of those crimes would have been *inadmissible* under K.S.A. 60-455 in a separate prosecution.

Nevertheless, in *Barksdale*, our Supreme Court rejected the defendant's arguments that it was error to allow evidence of each crime because it was inadmissible under K.S.A. 60-455 and because the evidence was more prejudicial than probative:

"Kansas case law and the provisions of K.S.A. 22-3202(1) make it clear that joinder is not dependent upon the other crimes being joined meeting the admissibility test set forth in K.S.A. 60-455. [Citations omitted.]

"While the defendant argues it was error in this case to allow evidence of each separate homicide because it was inadmissible under K.S.A. 60-455, and because such evidence was more prejudicial than probative, this assertion lacks merit. In *Cromwell*, we held that where separate but similar criminal charges are joined in a single trial, evidence material to each crime is admissible independent of K.S.A. 60-455. [Citation omitted.]" 266 Kan. at 510.

See *Bunyard*, 281 Kan. at 400. Therefore, joinder does not depend upon the evidence for each charge meeting the requirements of K.S.A. 60-455.

Nevertheless, K.S.A. 60-455 affords a sound basis for analyzing whether a defendant has been prejudiced by an improper joinder of charges. For example, if the admission of certain evidence is highly prejudicial to a defendant under K.S.A. 60-455, would the same evidence not be highly prejudicial to a defendant under K.S.A. 22-3202(1)?

Indeed, in a rape prosecution case involving an improper joinder of charges, Justice Lee Johnson, while a member of this court, cited K.S.A. 60-455 in pointing out the risk of prejudicial joinder and the inappropriate use of propensity evidence under the joinder statute:

"One can only surmise that by consolidating the accumulated rape reports in one prosecution, the State hoped to strengthen all three cases by inferring that Bunyard was disposed to commit date rape. Promoting the jury's use of character propensity reasoning would not be allowed in a separate trial. See K.S.A. 60-455. It should not be permitted via the use of joinder." *State v. Bunyard*, 31 Kan. App. 2d 853, 871-72, 75 P.3d 750 (2003) (Johnson, J., dissenting), *rev'd on other grounds* 281 Kan. 392, 133 P.3d 14 (2006).

Our Supreme Court later agreed with this court's majority and determined that the Bunyard cases were sufficiently similar to one another; thus, joinder was proper. *Bunyard,* 281 Kan. at 402-04. Justice Johnson's remarks, however, still underscore the problem with criminal disposition evidence in joinder cases: that a jury may use the evidence of one of the charged crimes to infer a criminal disposition on the part of the defendant, which the jury uses to find the defendant's guilt of the other charged crime or crimes.

Seemingly, to insure against prejudicial joinder under K.S.A. 22-3202(1), evidence resulting from separate charges improperly joined should not violate the permissible limits of K.S.A. 60-455 and if this occurs and the evidence would have been inadmissible in separate trials of the same charges, prejudice results. With this in mind, if separate trials had been granted in this case, the evidence of the sexual exploitation charge could not have been used in the trial of the aggravated indecent liberties charges under K.S.A. 60-455 and vice versa. None of the eight material facts listed in K.S.A. 60-455 or some other material fact not listed in the statute was relevant. Indeed, the State makes no argument that the evidence could have come in under K.S.A. 60-455. Consequently, the rule set out in *Cromwell* and *Barksdale* does not save the erroneous joinder of charges in this case and Coburn was prejudiced by the joinder of charges in a single trial.

### 3. Difficulty of Prevailing on Severance Issue

It should be pointed out that it has been nearly impossible for a defendant to gain relief on a severance issue. Our Supreme Court in *Bunyard,* 281 Kan. at 398, noted that it had discovered only one case, *State v. Thomas*, 206 Kan. 603, 481 P.2d 964 (1971), where it had reversed a conviction after a trial court denied severance.

In *Thomas*, our Supreme Court determined that the charges stemming from separate incidents were not similar and that the trial court's order of consolidation was prejudicial error and an abuse of discretion. 206 Kan. at 608-10. There, the defendant was charged with first-degree murder, robbery, and unlawful possession of a pistol, which all stemmed from one incident. Based on an unrelated and very different incident, the defendant was also charged with burglary, larceny, three counts of forgery, and three counts of uttering. The two groups of charges were consolidated for trial. Nevertheless, the jury was never instructed that it should consider the evidence in each case as applicable only to that case. In reversing the defendant's convictions, our Supreme Court stated:

> "Even though the trial court's order of consolidation is said to be an abuse of discretion, defendant still has the burden of showing prejudice that requires a reversal. Defendant says that since his defense to the murder charge was that the shooting was accidental, he was compelled to take the witness stand to explain the circumstances. As a result, defendant states he was forced to admit the forgery and uttering charges (he denied any participation in the Rutherford burglary), and thus was put in the position of submitting, as an admitted forger, his defense of accidental shooting in the murder case. He claims this circumstance destroyed any possibility that the jury would give credence to his claim that the shooting of [the victim] was accidental. Whether the jury would have believed defendant's description of the shooting, absent the influence of the forgery admissions by defendant, is not for us to decide. It must be conceded the jury may have been unduly influenced, particularly in the absence of any instruction in this regard." 206 Kan. at 609-10.

Our Supreme Court determined that the defendant had shown prejudice and ordered separate trials on the two groups of charges. *Thomas,* 206 Kan. at 610.

Our Supreme Court in *Bunyard* noted that in the case law before *Thomas*, and the 30-plus years since *Thomas*, many claims of abuse of judicial discretion relating to joinder or denial of severance have been before the Kansas appellate courts. Nevertheless, none of those have been successful. *Bunyard,* 281 Kan. at 398.

Thus, in all of the cases, except *Thomas*, that involved a denial of severance, our Supreme Court and this court have found that joinder was proper under the statue or that the defendant was not

prejudiced by the misjoinder. Nevertheless, like *Thomas*, the charges in this case do not fit within any of the exceptions of K.S.A. 22-3202(1). What distinguishes this case from *Thomas* is that in *Thomas* the jury was never instructed that it should consider the evidence in each case as applicable only to that case. The *Thomas* court factored this into its decision to reverse and remand for a new trial. 206 Kan. at 610-11.

Here, although the trial court instructed the jury to consider each case separately, we cannot say that the jury could keep separate what was relevant for each charge. Absent its admissibility because of joinder under K.S.A. 22-3202(1), it is difficult to conclude that the child pornography evidence, involving the sexual exploitation charge, was not offered to prove Coburn's criminal disposition to commit the aggravated indecent liberties charges or offered to show corroboration for those charges. Indeed, that is the way the State used the evidence of Coburn's alleged viewing of the child pornography. In the prosecutor's closing argument, the prosecutor told the jury that it could use the pornographic images to show Coburn's predisposition to commit the aggravated indecent liberties charges:

"How do we know that this touching was in a lewd manner with the intent to satisfy Ed Coburn's sexual desires? We look at the circumstances. First, you've got hundreds of Web sites that are known to contain child pornography. You've got the pictures in his My Documents file that are children. And what other reason is there for a 52-year-old man to be putting his hands on a child underneath their clothes on their breast or butt? There is no reason, other than for some sort of sexual gratification."

Clearly, the purpose of the prosecutor's argument concerning the child pornography images was to show Coburn's predisposition to commit the aggravated indecent liberties charges. Moreover, the prosecutor's argument would have allowed the jury to cumulate the evidence of the various offenses charged on the theory that he is a bad 52-year-old man who enjoys viewing child pornography and putting his hands under the clothing of children for the purpose of touching their bodies.

Indeed, there is no doubt in the way the State intended to use the child pornography evidence. As stated earlier, validating that

the child pornography evidence was offered to prove Coburn's criminal disposition to commit the aggravated indecent liberties charges, the State declares in its brief that the child pornography photos and web sites demonstrated "Coburn's intent in touching the girls." The State, however, emphasizes in its brief that the jury was instructed to consider each case separately. Nevertheless, it is disingenuous for the State to argue on the one hand that the jury could use the highly inflammatory child pornography evidence to show Coburn's predisposition to commit the aggravated indecent liberties charges and to imply on the other hand that Coburn was not prejudiced in the way it used the child pornography evidence because the jury was instructed to decide each case separately. Obviously, the State is attempting, to coin a popular, old English maxim: to have one's cake and eat it too.

The dissent, however, finds comfort in the jury instruction that required the jury to consider each case separately. Nevertheless, as explained in the previous paragraph, "[t]he Government should not have the windfall of having the jury be influenced by evidence against a defendant which, as a matter of law, they should not consider but which they cannot put out of their minds." *Delli Paoli v. United States,* 352 U.S. 232, 248, 1 L. Ed. 2d 278, 77 S. Ct. 294 (1957) (Frankfurter, J., dissenting) (cited with approval in *Bruton v. United States,* 391 U.S. 123, 129, 20 L. Ed. 2d 476, 88 S. Ct. 1620 [1968]).

Moreover, the jury instruction that required the jury to consider each case separately rests on the assumption that the jury will be able to treat the evidence relevant to each case separately. Nevertheless, in the present case, the State did not keep separate the evidence relating to the sexual exploitation charge and the aggravated indecent liberties charges. Indeed, the State commingled the evidence applicable to the sexual exploitation charge and the aggravated indecent liberties charges. For example, the State interspersed the testimony and the physical evidence it used to prove the sexual exploitation charge among the testimony it used to prove the aggravated indecent liberties charges. Moreover, as discussed above, the State told the jury to use the evidence concerning the sexual exploitation charge in determining whether the elements for

the aggravated indecent liberties charges had been met. The State never attempted to treat separately the sexual exploitation charge and the aggravated indecent liberties charges: either during the examination of witnesses or during the closing argument. This presents a legitimate concern that the jury was unable to consider each charge separately on the evidence and law applicable to it.

Nevertheless, the dissent quotes *Gaither*, 283 Kan. at 687: "[T]he court can presume that the jury complied with the instruction." In acknowledging this principle, the *Bruton* Court warned:

"It is not unreasonable to conclude that in many such cases the jury can and will follow the trial judge's instructions to disregard such information. Nevertheless, as was recognized in *Jackson v. Denno*[, 378 U.S. 368, 388-91, 12 L. Ed. 2d 908, 84 S. Ct. 1774 (1964)], there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." [Citations omitted.] *Bruton,* 391 U.S. at 135.

Here, the State, by its examination of witnesses and its closing argument, has called into question whether the jury would have been able to consider each case separately. In short, the State willingly embraced the evil sought to be avoided: the possibility of confounding the jury by scrambling and jumbling the evidence of the joined cases.

Significantly, the purpose of the prosecutor's criminal disposition argument was to pander to the forces of passion and prejudice. There is no telling what effect this pandering would have had on the jury's deliberation of the charges. Because the jury found Coburn guilty on all offenses charged, we are unable to say with any certainty that the jury carefully considered each charge separately on the evidence and law applicable to that charge. See *State v. Walker*, 244 Kan. 275, 280, 768 P.2d 290 (1989) (When a jury acquits a defendant on one or more of the offenses charged, this is an indication that the jury carefully considered each charge separately on the evidence and the law applicable to that charge.). As a result, we do not believe that a jury instruction consisting of two sentences could cure the prejudice caused by the joinder in this case.

In addition, the jury likely could have considered the evidence of sexual exploitation of a child corroborative of the aggravated indecent liberties with a child charges. The evidence against Coburn on some of the aggravated indecent liberties charges was not overwhelming. The child victims were the only witnesses to the aggravated indecent liberties acts that were charged against Coburn. The absence of physical evidence of sexual abuse made this case turn on the credibility of the victims, and part of the testimony presented by the State was inconsistent with the victims' earlier statements made in the case.

As a result, this situation created a credibility contest between Coburn and J.W. and S.W. On the other hand, the evidence of the sexual exploitation charge against Coburn was very strong. The jury may have cumulated the evidence of the various offenses and convicted Coburn on all offenses charged when if the sexual exploitation offense and the aggravated indecent liberties offenses had been considered separately, the jury may have found in his favor on some of the offenses. Indeed, the sexual exploitation charge and the aggravated indecent liberties charges were clearly separate and distinct. Moreover, the evidence of the improperly joined sexual exploitation offense and the aggravated indecent liberties offenses would not have been admissible at a separate trial for the other.

Finally, Coburn was charged with seven sex offenses against young children. The nature of the crimes themselves substantially increased the risk of prejudice. See *Bridges v. United States*, 381 A.2d 1073, 1078 (D.C. 1977), *cert. denied* 439 U.S. 842 (1978) ("We would observe, however, that when joinder is sought involving crimes such as rape, the risk of prejudice is substantial."). The probative value of the child pornography evidence was completely demolished by the highly inflammatory nature of the images. As a result, the child pornography evidence was sufficiently prejudicial as to deny Coburn a fair trial.

### E. Fatally Prejudicial

Nevertheless, for argument sake, assuming that one of the joinder requirements under K.S.A. 22-3202(1) was established, the trial court was under a continuing duty to grant a motion for sev-

erance "to prevent prejudice and manifest injustice to the defendant." *State v. Shaffer*, 229 Kan. 310, 312, 624 P.2d 440 (1981). Moreover, the requirements for joinder of charges under K.S.A. 22-3202(1) are similar to those concerning the joinder of two or more defendants under K.S.A. 22-3202(3). Interpreting K.S.A. 22-3202(3), our Supreme Court recognized that "even though the requirements of joinder are technically satisfied, the court should not join two defendants in one trial if either defendant will be prejudiced by the joinder. [Citation omitted.]" *State v. Aikins*, 261 Kan. 346, 360, 932 P.2d 408 (1997).

Further, the *Aikins* court stated that a defendant's right to a fair trial must be the overriding consideration of the trial court. 261 Kan. at 360; see also *State v. Boyd*, 281 Kan. 70, 81, 127 P.3d 998 (2006) ("Separate trials should be conducted upon a showing of actual prejudice stemming from a joint trial and, in such a circumstance, the trial court should not join the complaints or, if the complaints have been joined, should sever the cases for trial."). Here, a careful review of the record in this case leads to the conclusion that even if joinder was proper under K.S.A. 22-3202(1), the joinder was prejudicial to Coburn in the sense of denying him a fair trial. As a result, the denial of severance was manifest injustice.

It is well established that evidence of other crimes is inadmissible to prove criminal disposition, unless the evidence is relevant to one or more of the eight material facts listed in K.S.A. 60-455 or some other material fact not listed in the statute. When evidence of prior crimes has been erroneously admitted under K.S.A. 60-455, our Supreme Court and this court have reversed the defendants' convictions and remanded the cases for a new trial when the admission of the evidence was unduly prejudicial to the defendants. See *State v. Jones*, 277 Kan. 413, 424, 85 P.3d 1226 (2004); *State v. Davidson*, 31 Kan. App. 2d 372, 384-85, 65 P.3d 1078, *rev. denied* 276 Kan. 971 (2003).

In *Jones*, our Supreme Court stated that "evidence of a defendant's prior sexual misconduct—particularly when, as here, both the prior conduct and the conduct for which he is presently on trial involves minors—can easily convert to evidence for propensity or

other impermissible purposes." 277 Kan. at 424. Moreover, quoting *United States v. Peden*, 961 F.2d 517, 520 (5th Cir. 1992), our Supreme Court in *Jones* recognized that the

" 'admission of prior wrongful acts simply to show the defendant's bad character, notwithstanding that one possessed of a bad character is more likely to commit a crime than one who is not, is likely to prejudice the jury and blind it to the real issue of whether the defendant is guilty of the crime charged. For example, the jury may feel unsure that the government has proven its case, but decide that the defendant is an evil person who belongs in prison anyway.' " 277 Kan. at 424.

Because the child pornography evidence was highly inflammatory, a smoldering fire likely broke out. First, the evidence of the pornographic computer images could have distracted or clouded the jury's minds from the proper consideration of the aggravated indecent liberties charges. The dissent, after having reviewed the entire record, concludes that *"the eight pornographic images and the web-sites evidence"* did not have a " ' "substantial and injurious effect or influence" ' in convicting Coburn of the aggravated indecent liberties charges. See *Bunyard*, 281 Kan. at 402." (Emphasis added.) 38 Kan. App. 2d at 1078 (Buser, J., dissenting). Obviously, we read a different record than the dissent. Indeed, the pornographic material that the State presented concerning the sexual exploitation charge was substantial. The State introduced into evidence at trial a 487-page document listing a history of web sites that had been visited on Coburn's computer primarily between February 2000 and March 2000. The exhibit resulted from a search of Coburn's computer using the words "bitch, breast, cock, cunt, fuck, incest, molest, naked, penis, pussy, sexy, slut, suck, vagina, kidnap, young, teen, baby." The exhibit contained multiple sexually explicit web-site listings on each page and was thicker than a Black's Law Dictionary. This evidence was admitted in addition to testimony from two FBI agents relating to the images and web sites found on Coburn's computer, a 16-page exhibit of a history file detailing web sites that were accessed on the computer, an exhibit detailing when and how often certain sexually explicit web-sites were visited, an exhibit of the eight pornographic images found on Coburn's computer, an exhibit of several sexually explicit web-page banners and an image of a partially naked female found in a file on Coburn's computer, and testimony from several witnesses con-

cerning the amount of time Coburn spent on the computer. The vast amount of evidence presented to the jury on the sexual exploitation charge and the content of such highly inflammatory evidence made it very likely that some members of the jury would have been unable to separate this evidence when determining whether Coburn committed the aggravated indecent liberties charges.

For the dissent to conclude that the child pornography evidence did not have a substantial and injurious effect or influence in convicting Coburn of the aggravated indecent liberties charges is incredible, especially when the State sought to have the jury infer from that evidence that Coburn molested S.W. and J.W.

Second, the jury could have used the evidence of the sexual exploitation charge as evidence of Coburn's propensity to commit the aggravated indecent liberties charges. Third, the jury might have been unsure that the State had proven its case on one or more of the aggravated indecent liberties charges and may have used proof of the sexual exploitation charge as proof in itself of the other charges. Because the child pornography evidence was clearly more prejudicial than probative, it was an abuse of discretion not to sever the charges.

To prevent prejudice and manifest injustice to Coburn, justice required a severance of the sexual exploitation charge from the aggravated indecent liberties charges. As a result, we reverse Coburn's convictions and remand the case for a new trial.

## II. Constitutionality of K.S.A. 1998 Supp. 21-3516

Next, Coburn argues that K.S.A. 1998 Supp. 21-3516 is unconstitutional under the First and Fourteenth Amendments to the United States Constitution because it criminalizes the possession of simulated nude exhibitions of a person under the age of 18. Whether a statute is unconstitutional presents a question of law over which an appellate court's review is unlimited. *Skov v. Wicker*, 272 Kan. 240, 244, 32 P.3d 1122 (2001). The constitutionality of a statute is presumed, and all doubts must be resolved in favor of the statute's validity. Before a statute may be stricken down, it must clearly appear that the statute violates the Constitution. It is the

court's duty to uphold a statute under attack rather than defeat it. If there is any reasonable way to construe a statute as constitutionally valid, that construction should be given to the statute. A statute should not be stricken down unless the infringement of the superior law is clear beyond a reasonable doubt. *State v. Brown*, 280 Kan. 898, 899, 127 P.3d 257 (2006).

In his brief, Coburn quotes the language from K.S.A. 21-3516. Nevertheless, this version of K.S.A. 21-3516 was amended in 1998. The 1998 amendments to K.S.A. 21-3516 were in effect during the time period when Coburn allegedly committed the crimes in this case (November 1, 1998 through April 9, 2000). Nevertheless, the language on which Coburn focuses is the same in both versions of the statute. Based on the arguments raised by Coburn in his brief, the 1998 amendments to K.S.A. 21-3516 do not change this court's analysis of the issue.

K.S.A. 1998 Supp. 21-3516(a)(2) defines sexual exploitation of a child as:

"possessing any film, photograph, negative, slide, book, magazine or other printed or visual medium or any audio tape recording or any photocopy, video tape, video laser disk, computer hardware, software, floppy disk or any other computer related equipment or computer generated image that contains or incorporates in any manner any film, photograph, negative, photocopy, video tape or video laser disk in which a visual depiction of a child under 18 years of age is shown or heard engaging in sexually explicit conduct with intent to arouse or satisfy the sexual desires or appeal to the prurient interest of the offender, the child or another."

K.S.A. 1998 Supp. 21-3516(b)(1) defines "[s]exually explicit conduct" in part as "actual or *simulated*: Exhibition in the nude . . . ." (Emphasis added.)

Coburn contends that K.S.A. 1998 Supp. 21-3516 is unconstitutional on its face because it criminalizes the possession of "simulated" nude exhibition of a child. Coburn maintains that under *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 152 L. Ed. 2d 403, 122 S. Ct. 1389 (2002), K.S.A. 1998 Supp. 21-3516 unconstitutionally prohibits virtual child pornography.

Generally, pornography can be banned only if it is obscene. See *Miller v. California*, 413 U.S. 15, 37 L. Ed. 2d 419, 93 S. Ct. 2607, *reh. denied* 414 U.S. 881 (1973). Nevertheless, under *New York v.*

*Ferber*, 458 U.S. 747, 73 L. Ed. 2d 1113, 102 S. Ct. 3348 (1982), a State may proscribe pornography depicting children whether or not the images are obscene. This is because of a State's interest in protecting the children exploited by the production process. *Ashcroft*, 535 U.S. at 240; See *Ferber*, 458 U.S. at 758. Moreover, a State has a particular and compelling interest in prosecuting those who promote the sexual exploitation of children. *Ferber*, 458 U.S. at 761.

In *Ashcroft*, the United States Supreme Court found that the federal Child Pornography Prevention Act of 1996 (CPPA), 18 U.S.C. § 2251 (2000) *et seq.*, unconstitutionally prohibited virtual child pornography. The CPPA broadened the definition of child pornography to include sexually explicit images that appeared to depict minors but were produced without using any real children. 18 U.S.C. § 2256(8)(B) of the CPPA prohibited any visual depiction, including a computer-generated image, that "is, or appears to be, of a minor engaging in sexually explicit conduct." 535 U.S. at 241. 18 U.S.C. § 2256(8)(D) prohibited any sexually explicit image that was "advertised, promoted, presented, described, or distributed in such a manner that conveys the impression" it depicted "a minor engaged in sexually explicit conduct." 535 U.S. at 242. The United States Supreme Court determined that these sections were overbroad and unconstitutional. The Court noted that unlike actual child pornography, virtual child pornography does not involve, let alone harm, any children in the production process. 535 U.S. at 241. Moreover, unlike the actual child pornography in *Ferber*, "the CPPA prohibits speech that records no crime and creates no victims by its production." *Ashcroft*, 535 U.S. at 250.

Here, Coburn contends that simulated nude exhibition, which is proscribed as sexually explicit conduct under K.S.A. 1998 Supp. 21-3516(b)(1), is the same as virtual child pornography and *Ashcroft* would apply. Nevertheless, *Ashcroft* held unconstitutional the portion of the CPPA that broadened the definition of child pornography to include sexually explicit conduct that appeared to depict minors but had been produced without using any real children. 535 U.S. at 257-58. Here, Coburn does not argue that K.S.A. 1998 Supp. 21-3516 proscribes the possession of child pornography pro-

duced without using real children. Moreover, Coburn does not claim that any of the pictures found on his computer were not of real children. Instead, Coburn argues that the simulated nude exhibition language of K.S.A. 1998 Supp. 21-3516(b)(1) renders the statute unconstitutional.

As discussed above, K.S.A. 1998 Supp. 21-3516(b)(1) defines "sexually explicit conduct" in part as "actual or *simulated*: Exhibition in the nude . . . ." (Emphasis added.) The word "simulated" modifies the sexually explicit conduct listed in the statute. The word "simulate" is defined as follows: "1. To have or take on the appearance, form, or sound of: IMITATE. 2. To make a pretense of: FEIGN." Webster's II New College Dictionary 1029 (2001). Therefore, it appears that K.S.A. 1998 Supp. 21-3516 could possibly apply to situations where pictures of real children have been altered so that the children appear to be engaged in sexually explicit conduct. In fact, in the instant case, testimony was presented that one of the images presented to the jury appeared to have been altered.

In *Ashcroft*, the United States Supreme Court discussed 18 U.S.C. § 2256(8)(c) of the CPPA, which prohibited altered or morphed photos:

"Section 2256(8)(c) prohibits a more common and lower tech means of creating virtual images, known as computer morphing. Rather than creating original images, pornographers can alter innocent pictures of real children so that the children appear to be engaged in sexual activity. Although morphed images may fall within the definition of virtual child pornography, they implicate the interests of real children and are in that sense closer to the images in *Ferber*. Respondents do not challenge this provision, and we do not consider it." 535 U.S. at 242.

Thus, the United States Supreme Court expressly declined to discuss the constitutionality of the provision prohibiting these morphed images. The Court, however, stated that the morphed images did "implicate the interests of real children and are in that sense closer to the images in *Ferber*." *Ashcroft*, 535 U.S. at 242. In *Ferber*, the United States Supreme Court noted: "The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." 458 U.S. at 747. Legislation proscribing the production of or combating child pornography is

justified because "the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child." 458 U.S. at 758.

The rationale from *Ferber* appears to be applicable here. The images, even if altered to simulate sexually explicit conduct, implicate the interests of children and could harm their physiological, emotional, and mental health. For instance, if pictures of a child have been altered to simulate sexually explicit conduct and the child later discovers the altered pictures after they have been distributed to numerous people, the child could suffer irreparable harm to his or her emotional and mental health. Such harm could result from the child seeing himself or herself depicted in such a manner and from knowing that other individuals had also seen the images.

As a result, the simulated nude exhibition language of K.S.A. 1998 Supp. 21-3516(b)(1) does not render the statute unconstitutional under the United States Supreme Court's decision in *Ashcroft*. See *State v. Tooley*, 114 Ohio St. 3d 366, 374, 872 N.E.2d 894 (2007) (refusing to extend *Ashcroft* to cover morphed child pornography).

### III. Sufficiency of the Evidence—Aggravated Indecent Liberties With a Child Charges

Next, Coburn contends that there was insufficient evidence to convict him of aggravated indecent liberties with a child. When a defendant challenges the sufficiency of the evidence in a criminal case, an appellate court must consider all of the evidence, viewed in a light most favorable to the prosecution, and determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Parker*, 282 Kan. 584, 597, 147 P.3d 115 (2006).

#### A. Charges Involving J.W.

The jury found Coburn guilty of three counts of aggravated indecent liberties against J.W. One of these counts alleged that the act occurred between November 1, 1998, and November 30, 1998.

The other two counts alleged that the acts occurred between December 1, 1998 and March 1, 2000.

Coburn's convictions of aggravated indecent liberties against J.W. under K.S.A. 21-3504(a)(3)(A) required the State to prove beyond a reasonable doubt that Coburn fondled or touched J.W. with the intent to arouse or satisfy the sexual desires of either J.W. or Coburn or both; that at the time of the act, J.W. was a child under the age of 14; and that the act occurred between the dates listed in the charges. See PIK Crim. 3d 57.06 (1998 Supp.).

Coburn contends that there was no evidence to support at least two of the charges for aggravated indecent liberties against J.W. Coburn concedes that J.W. testified at trial that he touched her vagina one time in the basement of her grandmother's house in Kansas. Nevertheless, Coburn argues that this testimony should be viewed with skepticism by the jury because J.W. had to be prompted by the prosecutor with her testimony from the previous trial.

As an appellate court, we do not weigh conflicting evidence or pass on the credibility of witnesses. Further, we resolve all questions of credibility in favor of the State. *State v. Kuykendall*, 264 Kan. 647, 651, 957 P.2d 1112 (1998). An appellate court looks only to the evidence that supports the verdict, and if the essential elements of the charge are supported by any competent evidence, the conviction must stand. *State v. Adams*, 269 Kan. 681, 683-84, 8 P.3d 724 (2000).

At the trial held in this case, J.W. testified about an incident that occurred during Thanksgiving 1998 when Coburn was living with her and her family. According to J.W., Coburn tackled her to the floor, straddled her, and held her hands above her head. J.W. testified at the October 2005 trial that no inappropriate touching occurred during that incident. Nevertheless, in her April 2000 interview, J.W. informed the interviewing social worker that Coburn had touched her inappropriately during that incident. During her interview, J.W. also named several other incidents where Coburn had touched her inappropriately after he moved to Kansas. This interview was played to the jury at trial.

J.W. also testified about inappropriate touching that occurred in the basement of Rose's house in Kansas. During one incident, Coburn straddled her, attempted to put his hand into her pants, and rubbed her upper thigh on the outside of her clothes within an inch of her vagina. Further, after being reminded of her testimony at the previous trial, J.W. testified that Coburn had touched her vagina in the basement of her grandmother's home in Kansas. Although J.W. indicated that this incident occurred around Thanksgiving 1998, it must have occurred sometime in December 1998 or after because Coburn testified that he and Rose moved into their own house around December 1998. S.W. also testified about an incident that occurred in the living room of Rose's house in Kansas where Coburn had touched both her and J.W. S.W. testified that Coburn had his arms around her and S.W. and was touching their private parts. S.W. had talked about this incident during her April 2000 interview.

When viewing the evidence in the light most favorable to the State, we find sufficient evidence to convict Coburn of the three charges of aggravated indecent liberties against J.W.

### B. Charges Involving S.W.

The jury found Coburn guilty of three counts of aggravated indecent liberties against S.W. All of the counts alleged that the act occurred between December 1, 1998 and March 1, 2000.

Coburn concedes that S.W. testified that Coburn touched her three separate times in Kansas. Nevertheless, Coburn points to inconsistencies in S.W.'s testimony to argue that there was not sufficient evidence to support the charges involving S.W. Essentially, Coburn is asking this court to review the evidence before the jury. "Appellate courts do not reweigh evidence and determine the credibility of witnesses. To do so invades the province of the jury. [Citation omitted.]" *State v. Donaldson*, 279 Kan. 694, 701, 112 P.3d 99 (2005). It is for the jury to resolve inconsistencies in testimony. *State v. Cates*, 223 Kan. 724, 731, 576 P.2d 657 (1978). When reviewing the evidence in the light most favorable to the prosecution, we determine that there was sufficient evidence to

convict Coburn of the charges of aggravated indecent liberties against S.W.

### IV. Sufficiency of the Evidence—Sexual Exploitation of a Child Charge

Finally, Coburn argues that there was insufficient evidence to convict him of sexual exploitation of a child under K.S.A. 1998 Supp. 21-3516. When a defendant challenges the sufficiency of the evidence in a criminal case, an appellate court must consider all of the evidence, viewed in a light most favorable to the prosecution, and determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *Parker*, 282 Kan. at 597.

Coburn maintains that even though the evidence at trial showed that the computer contained photos that might violate K.S.A. 1998 Supp. 21-3516, there was no evidence that he opened those web sites, downloaded any of those pictures, or even knew of their existence.

Here, the evidence at trial established that Coburn was the only person who used the computer at Rose's house and that he was "always" on it. Moreover, Coburn's name was on the Internet account found on the computer. On the day that Coburn fled, C.W. discovered child pornography on the computer. Evidence presented at trial revealed that child pornography sites had been visited on dates when Coburn was living in Rose's house. Moreover, images of naked girls were discovered in the "My Documents" folder of the computer. The images of naked girls located in files on the computer were presented as exhibits at trial. This evidence was certainly sufficient to show that Coburn possessed the images on the computer. A conviction for even the gravest offense may be sustained by circumstantial evidence. *State v. Dixon*, 279 Kan. 563, 621, 112 P.3d 883 (2005).

Coburn also seems to argue that the State failed to establish that the images were of children under the age of 18. Coburn focuses on the testimony he presented at trial from a medical doctor working in the field of child abuse and neglect. The doctor could not give an opinion on the age of the individuals depicted in most of

the images admitted as exhibits at trial. Moreover, the doctor testified that it appeared one of the girl's images had been altered. Nevertheless, the doctor testified that in her opinion within a reasonable degree of medical certainty was that one of the girls depicted in the images was under the age of 18. Thus, the doctor's testimony established that at least one of the images depicted a child under the age of 18. Moreover, the jury saw the pictures and, after hearing the doctor's testimony, reached its own conclusion that the girls depicted in the pictures were under the age of 18. It is the jury's function, not an appellate court's, to weigh the evidence and determine the credibility of witnesses. *State v. Doyle*, 272 Kan. 1157, 1162-63, 38 P.3d 650 (2002).

After reviewing the evidence in the light most favorable to the prosecution, we determine that there was sufficient evidence to convict Coburn of sexual exploitation of a child in violation of K.S.A. 1998 Supp. 21-3516(a)(2).

Reversed and remanded with directions for separate trials.

BUSER, J., concurring in part and dissenting in part: I concur in the holding that K.S.A. 1998 Supp. 21-3516 is not unconstitutional and that there was sufficient evidence underlying all of Edward N. Coburn, Sr.'s convictions. I dissent from the majority's holding that the trial court committed reversible error in denying Coburn's motion to sever the sexual exploitation of a child count from the six counts of aggravated indecent liberties with a child.

### *Introduction*

The trial judge who ruled on the severance motion prior to the retrial of this case was the same judge who presided over Coburn's original trial. Unlike the typical situation wherein a trial judge rules on a pretrial severance motion based only on proffers of evidence and arguments of counsel, this judge had the benefit of being fully advised of both parties' case theories and arguments, in addition to having observed the witnesses, listened to their testimony, and reviewed the documents and photographs from the prior trial. As a result, the trial judge was in a unique position to evaluate and properly conclude that the sexual exploitation charge was of a

"same or similar character" to the aggravated indecent liberties charges under K.S.A. 22-3202(1).

My colleagues, on the other hand, upon review of the record on appeal, find as a matter of law that the trial court improperly held the sexual exploitation charge and aggravated indecent liberties charges were of the same or similar character under K.S.A. 22-3202(1), and that due to the resulting prejudice to Coburn, the trial court abused its discretion in denying severance. These findings will be addressed individually.

### Crimes of the Same or Similar Character

The majority concedes the similarities among all the crimes in this case: (1) the crimes involved minors; (2) they involved sexual gratification; (3) they were of a lewd nature; and (4) some of the crimes occurred at Coburn's residence. Still, the majority concludes that "the similarities seem to stop there." 38 Kan. App. 2d at 1044-45. I disagree.

The fundamental similarity in the character of the crimes may be found in our statutes. Sexual exploitation of a child (K.S.A. 1998 Supp. 21-3516) and aggravated indecent liberties with a child (K.S.A. 21-3504) are both categorized as sex offenses. Most importantly, a review of the elements of proof of both types of sex offenses establishes their same or similar character.

As set forth in Instruction No. 15, in order for the jury to convict Coburn of sexual exploitation of a child the State was required to prove:

"1. That the defendant possessed computer hardware or other computer related equipment or computer generated image that contains or incorporates in any manner, a photograph in which a visual depiction of a child under 18 years of age is shown or heard engaging in sexually explicit conduct; and

"2. That the defendant did so with the intent to arouse and satisfy the sexual desires or appeal to the prurient interest of the defendant, the child, or another; and

"3. That this act occurred between the 1st day of December, 1998 and the 9th day of April, 2000, in Wyandotte County, Kansas."

See K.S.A. 1998 Supp. 21-3516; PIK Crim. 3d 57.12-A (1998 Supp.).

As set forth in Instructions Nos. 9, 10, 11, 12, 13, and 14, in order for the jury to convict Coburn of aggravated indecent liberties with a child the State was required to prove:

"1. That the defendant fondled or touched the person of [S.W or J.W.] in a lewd manner, with intent to arouse or satisfy the sexual desires of either the child or the defendant, or both;

"2. That at the time of the act, [S.W. or J.W.] was a child under the age of 14; and

"3. That this act occurred between the 1st day of [November or December], 1998 and the 1st day of March, 2000, in Wyandotte County, Kansas."

See K.S.A. 21-3504; PIK Crim. 3d 57.06 (1998 Supp.).

As is plain from the statutory elements, both types of sex offenses prohibit a defendant's indecent conduct involving a child with the intent to arouse or satisfy the sexual desires of the child, and/or the defendant. K.S.A. 1998 Supp. 21-3516, PIK Crim. 3d 57.12-A (1998 Supp.); K.S.A. 21-3504; PIK Crim. 3d 57.06 (1998 Supp.). As enacted by the legislature, the essence of both types of sex offenses is the same—to prohibit lewd conduct perpetrated against children.

In the present case, there were also five similar factual characteristics proving the elements of the sexual exploitation charge and aggravated indecent liberties charges.

First, the victims were young girls. As noted by the majority, the sexual exploitation charge involved evidence that Coburn visited child pornography sites and images of naked girls were found in the "My Documents" folder of the computer. With regard to the aggravated indecent liberties charges, S.W. was a young girl, 9 to 10 years old, at the time of the offenses. Her sister, J.W., was a young girl, 12 to 13 years old, at the time of the offenses.

Although my colleagues observe that S.W. and J.W. were not the same children as those depicted in the pornography, our Supreme Court has never required victims in multiple counts to be identical. To the contrary, our Supreme Court has approved a trial court's joinder or refusal to sever multiple counts involving different victims listed in different counts of a single charging document. See *State v. Gaither*, 283 Kan. 671, 686-88, 156 P.3d 602 (2007) (two separate murder victims); *State v. Bunyard*, 281 Kan. 392,

396-404, 133 P.3d 14 (2006) (three separate rape victims); *State v. Plaskett*, 271 Kan. 995, 1018-20, 27 P.3d 890, (2001) (three separate aggravated incest victims).

My colleagues' next concern that the ages of S.W. and J.W. were not identical to the ages of the children depicted in the pornography seems to be a distinction without a difference. What matters is that all the victims in all the counts of the information shared one important similar characteristic—they were all young girls.

Finally, the majority distinguishes the character of the two types of sex offenses by asserting that, unlike the aggravated indecent liberties charges which involved "specific child victims," the victim of the sexual exploitation charge was "society in general." 38 Kan. App. 2d at 1045. The crimes of sexual exploitation of a child and aggravated indecent liberties with a child, however, are found in Article 35 which catalogues sex offenses involving individual victims. Crimes against public morals, including promoting obscenity, K.S.A. 21-4301, are classified in Article 43. Moreover, the gravamen of K.S.A. 1998 Supp. 21-3516 is found in its title: "Sexual exploitation of a child." The naked young girls whose pictures were downloaded by Coburn on his computer, although anonymous, were specific child victims of Coburn's sexual exploitation.

The second similar characteristic of both types of sex offenses is the prohibited conduct—lewd behavior. Coburn engaged in lewd behavior both by touching S.W. and J.W. and by accessing and possessing sexually explicit images of young girls. The majority counters that "[u]nlike the aggravated indecent liberties charges, the sexual exploitation charge did not involve any inappropriate touching." 38 Kan. App. 2d at 1045. Again, this distinction is not dispositive. As the Supreme Court observed in *Bunyard*: "Crimes against persons, particularly including sex crimes and crimes against children, have variances in the facts. No such crime is a clone of another." 281 Kan. at 401. Whether one views young girls in sexually explicit poses on a computer screen or actually engages in sexually explicit conduct with young girls, the character of the offense is similar—it is lewd behavior that victimizes young children.

Third, Coburn's motive or intent as to both types of sex offenses was identical. With regard to the sexual exploitation charge, it is

understatement to observe that an individual who possesses lewd images of young girls and visits child pornography web sites featuring "teen eroticism," "little virgins," and "nude teen Lolitas" has a motive or intent to "arouse or satisfy the sexual desires or appeal to the prurient interest of the offender." See K.S.A. 1998 Supp. 21-3516(a)(2). As a panel of our court determined in the first trial, *State v. Coburn*, 32 Kan. App. 2d 657, 667, 87 P.3d 348, *rev. denied* 278 Kan. 848 (2004), "[t]he vulgar names of the websites had probative value for this element." Similarly, Coburn's inappropriate touching of the genital, chest, and other private areas of S.W. and J.W., while purportedly wrestling with them, was surely probative of an "intent to arouse or satisfy the sexual desires . . . of the offender." See K.S.A. 21-3504(a)(3)(A).

Fourth, the location of the crimes was another similar characteristic. The sexual exploitation offense occurred in the privacy of Rose Coburn's home (Coburn's wife and the grandmother of S.W. and J.W.) while several of the incidents of aggravated indecent liberties also occurred at her residence.

Fifth, all the crimes were alleged to have occurred during the same 17-month time period—November 1, 1998 through April 1, 2000.

In addition to the sexual exploitation charge and aggravated indecent liberties charges sharing similar elements of proof and similar case facts, both types of sex offenses also required "the same mode of trial, the same kind of evidence, and the same kind of punishment." See *Gaither*, 283 Kan. at 686-87.

With regard to mode of trial, Coburn had a constitutional and statutory right to a jury trial as to both types of sex offenses because they are felonies for which imprisonment of more than 6 months is authorized. See Kansas Constitution Bill of Rights § 5; K.S.A. 22-3403; *City of Wichita v. Bannon*, 37 Kan. App. 2d 522, 525, 154 P.3d 1170 (2007).

The same kind of evidence—testimonial, documentary, direct and circumstantial—was presented at trial by the State and Coburn regarding both types of sex offenses. Of particular significance, the State presented seven witnesses—S.W., J.W., Rose Coburn, C.W. (the girls' mother), K.F. and L.C. (girlfriends of S.W. and J.W.),

and Kansas City, Kansas Police Captain Alexander Krump—who provided testimony about both the sexual exploitation charge and the aggravated indecent liberties charges. Our Supreme Court has noted common witnesses in upholding denial of severance claims when a witness provided testimony to prove multiple offenses joined in one charging document. See *Gaither*, 283 Kan. at 687 (one common witness); *State v. Barksdale*, 266 Kan. 498, 508-10, 973 P.2d 165 (1999) (one common witness). Finally, Coburn testified on his own behalf denying any culpability for any of the sex offenses.

With regard to the same kind of punishment, the legislature has established significant penalties of incarceration for both sexual exploitation of a child (severity level 5 person felony) and aggravated indecent liberties with a child under 14 years of age (severity level 3 person felony). K.S.A. 1998 Supp. 21-3516(c); K.S.A. 21-3504(c).

In summary, my de novo review of the elements of proof for the sexual exploitation charge and aggravated indecent liberties charges, the case facts establishing those elements of proof, and the related considerations of mode of trial, kind of evidence, and the kind of punishment, convince me that "the district court properly concluded that a condition precedent had been met." *Gaither*, 283 Kan. 671, Syl. ¶ 4. In other words, the crimes of sexual exploitation of a child and aggravated indecent liberties with a child committed by Coburn were of the same or similar character to be joined under K.S.A. 22-3202(1).

### *Prejudice Analysis*

I have two concerns regarding the majority's holding that the trial court abused its discretion because Coburn was prejudiced by the trial court's denial of severance. First, my colleagues have blurred our Supreme Court's long-standing rules of prejudice analysis in severance cases. Second, my review of the record convinces me that Coburn has failed to prove sufficient prejudice to merit reversible error.

My colleagues posit that "when the misjoinder of charges has occurred, some prejudice almost always results. In other words,

when joinder is improper, some prejudice is shown from the very fact of the joinder." 38 Kan. App. 2d at 1050. This is a new statement of law, without precedent in Kansas, that is not helpful to an analysis of whether Coburn has met his burden of proving reversible error. As the majority ultimately concedes, *Bunyard* establishes the standard that "error due to misjoinder requires reversal only if the error had a 'substantial and injurious effect or influence in determining the jury's verdict.'" 281 Kan. at 402 (quoting *United States v. Lane*, 474 U.S. 438, 449, 8 L. Ed. 2d 814, 106 S. Ct. 725 [1986]).

Of more concern is my colleagues' statement that "a K.S.A. 60-455 analysis is a relevant tool to use in determining whether prejudice results from the joinder of the charges." 38 Kan. App. 2d at 1051. This is an inexact formulation derived from *Barksdale*, 266 Kan. at 510: "[W]here the evidence of crimes joined for trial would have been admissible under K.S.A. 60-455 in a separate prosecution, the defendant is unable to demonstrate any prejudice when the crimes are tried in a single trial. [Citation omitted.]" From this precedent the majority states, without authority, the notion: "Inversely, this rule implies that a defendant may be *able* to show prejudice when crimes are tried in a single trial and the evidence of the crimes joined for trial would have been *inadmissible* under K.S.A. 60-455 in a separate prosecution." 38 Kan. App. 2d at 1052.

Inconsistently, my colleagues then cite *Bunyard*: "'Kansas case law and the provisions of K.S.A. 22-3202(1) make it clear that joinder is not dependent upon the other crimes being joined meeting the admissibility test set forth in K.S.A. 60-455.' [Citations omitted.]" 281 Kan. at 400 (quoting *Barksdale*, 266 Kan. at 510). In the final analysis, aside from this appropriate citation to *Bunyard*, the majority's conflation of K.S.A. 60-455 and severance jurisprudence is at variance with our Supreme Court's most recent pronouncement in *Gaither*: "Applying the limitations of K.S.A. 60-455 to the joinder of charges would effectively nullify the application of K.S.A. 22-3202(1) when the crimes charged are of the same or similar character." 283 Kan. at 688 (agreeing with *Barksdale*).

Turning to the majority's finding of prejudice, my colleagues find reversible error by speculating that "[b]ecause the child pornography evidence was highly inflammatory, a smoldering fire likely

broke out," causing the jury to convict Coburn of the aggravated indecent liberties charges. 38 Kan. App. 2d at 1060. Critical to this determination are the majority's conclusions that "the evidence of sexual exploitation against Coburn was very strong" and that because of the "highly inflammatory nature of the images . . . the child pornography evidence was sufficiently prejudicial as to deny Coburn a fair trial." 38 Kan. App. 2d at 1058.

The questionable basis for this finding of prejudice is best shown by reference to Coburn's motion for new trial where he contended the exact converse: "Without the indecent liberties evidence . . . no opinion, much less a conclusion beyond a reasonable doubt, could be made regarding the [photographic] images, no rational factfinder could have convicted. The only plausible explanation is that the jury was inflamed by the indecent liberties evidence." On appeal, however, Coburn reverses himself. In a seven sentence argument he now asserts: "The jury was likely to conclude that because Mr. Coburn visited and viewed pornographic sites, he must be someone who molests children." Coburn's claim of prejudice on appeal is directly antithetical to the argument he made before the district court. This about-face underscores the tenuous basis for the majority's finding that the evidence supporting the sexual exploitation charge prejudiced the jury's consideration of the aggravated indecent liberties charges.

Ironically, the majority's discussion of *State v. Thomas*, 206 Kan. 603, 481 P.2d 964 (1971), also highlights the lack of prejudice in this case. *Thomas* is noteworthy for being the only known case wherein a Kansas appellate court has reversed a trial court's order of joinder or denial of severance. See *Bunyard*, 281 Kan. at 398. As my colleagues point out, "[w]hat distinguishes this case from *Thomas* is that in *Thomas* the jury was never instructed that it should consider the evidence in each case as applicable only to that case. The *Thomas* court factored this into its decision to reverse and remand for a new trial. 206 Kan. at 610-11." 38 Kan. App. 2d at 1055. I agree.

Unlike *Thomas,* the trial judge in this case provided the jury with Instruction No. 8, which read:

"Each crime charged against the defendant is a separate and distinct offense. You must decide each charge separately on the evidence and law applicable to it, uninfluenced by your decision as to any other charge. The defendant may be convicted or acquitted on any or all of the offenses charged. Your finding as to each crime charged must be stated in a verdict form signed by the Presiding Juror."

In response, my colleagues observe: "Here, although the trial court instructed the jury to consider each case separately, we cannot say that the jury could keep separate what was relevant for each charge." 38 Kan. App. 2d at 1055. This conclusion, however, is at variance with both *Gaither* and *Barksdale* wherein our Supreme Court rejected similar claims of jury confusion precisely because the juries were instructed in the same manner as Instruction No. 8 which was given in the present case. *Gaither*, 283 Kan. at 687; *Barksdale*, 266 Kan. at 510. As our Supreme Court said in *Gaither*, "the court can presume that the jury complied with the instruction." 283 Kan. at 687.

The majority is concerned, however, about "the possibility of confounding the jury by scrambling and jumbling the evidence of the joined cases." 38 Kan. App. 2d at 1057. At the outset, this terminology is elusive. Nevertheless, I believe my colleagues' concern is unwarranted. They quote two sentences from the State's closing argument wherein the prosecutor suggested that Coburn's intent to satisfy his sexual desires by lewdly touching S.W. and J.W. could be inferred from the sexual exploitation of a child evidence. Assuming arguendo that this argument was improper, this error was not apparent to defense counsel who failed to object to it at trial or on appeal. Moreover, contrary to the majority's concern, these two sentences dealt with proof of the intent to satisfy Coburn's sexual desires, not proof of a general predisposition to commit crimes. In the present case the State was required to prove beyond a reasonable doubt in both the sexual exploitation charge and the aggravated indecent liberties charges that Coburn had the identical intent—to arouse or satisfy the sexual desires of the child and/or the defendant. See K.S.A. 1998 Supp 21-3516(a)(2) and K.S.A. 21-3504(a)(3)(A).

My review of the entire record, including both the presentation of witnesses and the parties' opening statements and closing arguments reflects that—apart from the two sentences mentioned earlier—both parties presented their evidence and argument regarding the two types of sex offenses separately and without reference to the other. This separate mode of presentation of evidence and argument, coupled with the trial court's admonitions in Instruction No. 8, were sufficient to provide Coburn with a fair trial.

One other difference distinguishes this case from *Thomas*. In *Thomas*, the defendant desired to testify regarding the purported accidental nature of the shooting, yet he complained of prejudice because the joinder of forgery and uttering charges required him to also testify and admit guilt to a crime of dishonesty. In the present case, however, Coburn does not raise this claim of prejudice. In fact, his defense to both the sexual exploitation charge and the aggravated indecent liberties charges was the same—he was innocent of all the allegations. In contrast to *Thomas*, the denial of severance could not have adversely impacted Coburn's decision to testify regarding both types of sex offenses.

Finally, having reviewed the entire record, I am unable to conclude that the eight pornographic images and the web-sites evidence had a " 'substantial and injurious effect or influence' " in convicting Coburn of the aggravated indecent liberties charges. See *Bunyard,* 281 Kan. at 402.

My colleagues disagree, noting the "vast amount" of "highly inflammatory evidence" presented to prove the sexual exploitation charge. 38 Kan. App. 2d at 1061. In particular, the majority focuses on the coarse and lewd search terms used by the FBI in the text search of Coburn's computer, and State's Exhibit 11, which was a computer printout listing the web sites accessed on Coburn's computer which contained these search terms.

Reasonable jurists may disagree as to the point when the sheer quantity of probative evidence becomes prejudicial. If some of the evidence to prove the sexual exploitation charge admitted at Coburn's trial was overly prejudicial, however, it was not because the trial court overruled Coburn's severance motion. It was because Coburn's counsel did not contemporaneously object to the

admission of this evidence at trial based upon the grounds cited by the majority—that it was cumulative and highly inflammatory—or because when Coburn's counsel did object, he failed to appeal the trial court's adverse ruling. Assuming some of the evidence was cumulative and inflammatory, Coburn should have properly objected to it and raised it as an issue in this appeal. His failure in this regard should preclude review. See K.S.A. 60-404; *State v. Anthony*, 282 Kan. 201, 206, 145 P. 3d 1 (2006) (in order to preserve an issue for appeal a party must make a timely and specific objection); see also *State v. Walker*, 283 Kan. 587, 594, 153 P.3d 1257 (2007) (an issue not briefed by the appellant is deemed waived or abandoned).

Central to my determination that the evidence supporting the sexual exploitation charge did not substantially influence the jury's verdicts on the aggravated indecent liberties charges, is the overwhelming wealth of evidence proving Coburn's guilt in sexually abusing S.W. and J.W.

A variety of witnesses provided incriminating testimony tending to show that Coburn repeatedly engaged in lewd touching of S.W. and J.W., beginning in Maryland and continuing into Kansas during the 17-month period. The separate testimony of two victims, S.W. and J.W., established Coburn's modus operandi—wrestling. Coburn's wrestling included tickling or claiming to look for the young girls "bellybutton[s]." This behavior was witnessed by K.F., a friend of the girls, who testified she observed it "[e]very time we went over there." Another friend and next-door neighbor of the girls, L.C., testified she personally observed Coburn during wrestling "try to slide his hand into their shirts or try to put it inside their pants." L.C. even described a separate, unrelated incident where Coburn "tackled me and he had my wrists pinned down to the ground. He was sitting on my pelvic area and he started to grind on me." When L.C. yelled, Coburn told her, "[I]t's okay, be quiet."

In addition to the testimony of the two victims, their mother, and their two friends, the defense inexplicably presented damaging testimony by Coburn's wife, Rose. Under questioning by defense counsel, Rose testified that although she initially believed her hus-

band's denials of sexual abuse, she ultimately concluded her husband had, in fact, molested her granddaughters.

The jury was also shown the handwritten note Coburn left for his wife at the time he abandoned the family. In it, Coburn acknowledged hearing rumors that he had molested S.W. and J.W., but he denied the accusations and concluded:

"I don't care now. My life is over now. I was living on borrowed time, anyway. At least I will have fun the last years of my life with the money—the money will help me to settle down. I am sorry. Hope it didn't—I am sorry it didn't work out. Love, Ed."

Finally, at trial, Coburn admitted that he stole $10,000 from his employer to facilitate his flight from Kansas to start his life anew in Las Vegas, where he was ultimately apprehended.

In summary, this trial evidence (apart from the sexual exploitation evidence) made a very compelling case that Coburn had repeatedly sexually abused S.W. and J.W. Given the quality and quantity of this incriminating evidence, the sexual exploitation evidence could not have caused any manifest injustice sufficient to deprive Coburn of a fair trial. It should be remembered: "A district court abuses its discretion when no reasonable person would adopt the view taken by the court. Thus, the defendant has a heavy burden to establish reversible error once the court concludes that one of the conditions precedent set forth in K.S.A. 22-3202(1) is met." *Gaither*, 283 Kan. at 688. Quite simply, Coburn wholly failed to meet this heavy burden.

I would affirm the convictions.