NOT DESIGNATED FOR PUBLICATION

No. 123,841

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

NATHAN BRAZILLE,
*Appellant.*


MEMORANDUM OPINION


Appeal from Sedgwick District Court; JEFFREY SYRIOS, judge. Opinion filed August 12, 2022. Affirmed.


*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant.


*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before SCHROEDER, P.J., GREEN and GARDNER, JJ.


PER CURIAM: Nathan Charles Brazille was charged in three cases with various sexual crimes against three girls under the age of 14 years old. When the State moved to consolidate the three cases, Brazille opposed the motion, arguing consolidation would prejudice him. The district court granted the State's motion and consolidated the three cases, and a jury found Brazille guilty of all nine charges. Brazille then moved for a new trial, alleging ineffective assistance of counsel. The district court held an evidentiary hearing; considered the testimony from Brazille, his trial counsel, and a private investigator; and then denied Brazille's motion finding his trial counsel did not violate his

1

Sixth Amendment right to effective representation. Brazille now appeals, contending that the district court erred by consolidating the cases and by denying his motion for a new trial. After reviewing the record and finding no error, we affirm.

*Factual and Procedural Background*

In 17 CR 671, the State charged Brazille with two counts of aggravated indecent liberties with S.S. In 18 CR 2157, the State charged Brazille with two counts of aggravated indecent liberties with S.G., two counts of attempted aggravated sodomy, and one count each of rape and attempted rape of S.G. In 18 CR 2823, the State charged Brazille with aggravated indecent liberties with L.C. Brazille waived his right to a preliminary hearing in case 17 CR 671. The State held a preliminary hearing for 18 CR 2157 in October 2018, presenting evidence only from Detective Crystal Schell regarding her conversation with S.G. and S.G.'s mother. The district court found probable cause existed to bind Brazille over on the six charges. Brazille waived the preliminary hearing in 18 CR 2823.

The State moved to consolidate the three cases for trial. The district court held a hearing, took the matter under advisement, and then granted the State's motion. We discuss this decision further in our analysis below.

Brazille's cases proceeded to a jury trial in February 2020. We find it unnecessary to set out the detailed evidence presented, given the limited issues on appeal. It suffices to say that the State presented testimony from each of the victims, some of their family members, and nurses, police officers, or other persons who interviewed the victims soon after the crimes occurred. Brazille does not challenge the sufficiency of the evidence.

After the State rested, Brazille called Evelyn Brown to the stand. Brown testified she had asked her granddaughter, L.C., whether Brazille had touched her private parts

and L.C. replied no. Brazille also called Detective Chris Zandler. Zandler testified that L.C.'s mother had told him only that Brazille touched L.C. on the thigh. Zandler also testified that when he interviewed Brown, she told him L.C. had admitted that Brazille had touched only her thigh. But on cross-examination, Zandler confirmed that L.C. had told him that Brazille had touched her vagina.

After a four-day trial, the jury found Brazille guilty on all charges. Brazille then filed several pro se motions, seeking a new trial and asserting ineffective assistance of counsel. In response, the district court appointed Brazille new counsel, held an evidentiary hearing about the effectiveness of counsel, then denied Brazille's motion. We detail below the evidence presented at this hearing.

Before sentencing, Brazille moved for a departure sentence from an off-grid life term to an on-grid sentence. The district court denied that motion and sentenced Brazille to nine consecutive life prison terms.

Brazille timely appeals.

## Did the District Court Err by Consolidating the Three Cases?

Brazille first contends that the district court erred by consolidating the three cases into one because doing so was unduly prejudicial.

### Standard of Review

We review potential joinder errors by using a three-step analysis, applying a different standard of review at each step. First, the district court determines whether joinder is permitted under K.S.A. 22-3203, which allows a court to try together multiple complaints against a defendant if the State could have brought the charges in a single

complaint. That statute lists three conditions for this analysis. Whether one of these conditions is satisfied is a fact-specific inquiry which we review for substantial competent evidence. We then review de novo the district court's legal conclusions on whether a condition was met. *State v. Carter*, 311 Kan. 783, 793, 466 P.3d 1180 (2020).

Second, because K.S.A. 22-3202(1) provides that the district court *may* charge these types of cases together, a district court may deny a request to consolidate even if the facts satisfy a statutory condition. We review that decision for an abuse of discretion. *Carter*, 311 Kan. at 793. A district court abuses its discretion if it takes action that is arbitrary, fanciful, or unreasonable, or if the decision turns on an error of law or fact. *State v. Smith-Parker*, 301 Kan. 132, 160-61, 340 P.3d 485 (2014).

Finally, if an error occurred at one of these steps, we determine whether the error resulted in prejudice under K.S.A. 2021 Supp. 60-261—that is, we ask whether the error affected a party's substantial rights. *Carter*, 311 Kan. at 793. The party benefiting from the error must prove "'there is no reasonable probability the error affected the trial's outcome in light of the entire record.'" *State v. Hurd*, 298 Kan. 555, 564, 316 P.3d 696 (2013) (quoting *State v. McCullough*, 293 Kan. 970, Syl. ¶ 9, 270 P.3d 1142 [2012]).

*Step 1*

The district court *may* join two or more crimes in a single complaint if the crimes are: (1) of the same or similar character; (2) based on the same act or transaction; or (3) based on two or more acts or transactions connected together or constituting parts of a common scheme or plan. K.S.A. 22-3202(1). Similarly, the district court may order two or more complaints to be tried together so long as the crimes could have been joined in a single complaint. K.S.A. 22-3203.

4

The district court focused on whether the crimes alleged in the complaints had the same or similar character. The crimes need not be close in time, as appellate courts have determined that events occurring 17 months apart were of the same or similar character. See *State v. Cruz*, 297 Kan. 1048, 1057, 307 P.3d 199 (2013); see also *State v. Cromwell*, 253 Kan. 495, 512, 856, P.2d 1299 (1993) (finding joinder appropriate where four years passed between two murders). But the crimes do have to be factually similar. *State v. Crosby*, 312 Kan. 630, 634, 479 P.3d 167 (2021). Mere overlap of the types or categories of crimes charged is not enough to establish the "same or similar character" condition. See *Smith-Parker*, 301 Kan. at 157-58. There must be "multiple commonalities" between or among the cases. 301 Kan. at 157.

Brazille does not challenge the substantial competent evidence showing his crimes were of the same or similar character and does not claim that the district court acted arbitrarily or fancifully in joining the three cases. Rather, Brazille argues that the district court acted unreasonably by consolidating because his case would be won or lost based on credibility—and joining the evidence from three alleged victims about nine separate sexual crimes made the jury more likely to disbelieve him and to find him guilty, prejudicing him.

Although prejudice is not part of the district court's analysis in deciding a motion to consolidate, see *Crosby*, 312 Kan. at 633, it is part of the district court's analysis when deciding to allow the jury to hear K.S.A. 60-455(d) evidence. See *State v. Bowen*, 299 Kan. 339, Syl. ¶ 7, 323 P.3d 853 (2014) (finding K.S.A. 2013 Supp. 60-455[d] requires balancing of probativeness and undue prejudice). That statute provides generally that "in a criminal action in which the defendant is accused of a sex offense . . . evidence of the defendant's commission of another act or offense of sexual misconduct is admissible, and may be considered for its bearing on any matter to which it is relevant and probative." K.S.A. 2021 Supp. 60-455(d). So even when a district court finds that evidence satisfies the general test for admissibility in K.S.A. 2021 Supp. 60-455(d), as here, it must

5

determine that the probative value outweighs any undue prejudice to the defendant before allowing the jury to hear that evidence. And part of the district court's decision here about consolidation included whether the court would admit K.S.A. 60-455(d) evidence against Brazille, and if so, what its effect would be. We thus construe Brazille's prejudice argument as alleging that the district court abused its discretion.

Although Brazille does not challenge the facts, we nonetheless determine whether substantial competent evidence supports the district court's factual findings that the cases were of the same or similar character. The district court issued a written decision, beginning with the applicable statutes and caselaw for joinder. The district court found that the three cases were of the "same or similar character" and that evidence of each count within all three cases would be admissible under K.S.A. 2019 Supp. 60-455(d) at a separate trial to prove Brazille's propensity to commit the crimes. The district court noted the similarities among the three cases, including that the charges would rely on the same or similar issues and would require the same type of testimony and evidence.

The record shows:

- the incidents all took place within a two-year period;
- all victims were females under the age of 14;
- Brazille had some familial, friendly, or romantic relationship with an adult member of each victim's family and considered himself an "uncle" to each victim;
- all victims alleged Brazille had inappropriately touched her private parts under a blanket;
- all charges are sex offenses and would present the same issues and require the same type of testimony and evidence;

6

- two of the three victims alleged inappropriate touching had occurred at Brown's home, one of the victims being Brown's granddaughter;
- all victims alleged Brazille had committed similar acts against them;
- each case includes charged crimes having the same or similar length of punishment; and,
- the mode of trial for each case would be a jury trial.

These facts provide substantial competent evidence supporting the district court's findings that the three cases were of the same or similar character. See *Carter*, 311 Kan. at 793.

We next review the district court's legal finding that the facts of the cases satisfy a statutory condition precedent to consolidation. *Carter*, 311 Kan. at 793. The district court weighed similarities against the dissimilarities, listed the similarities that warranted a joint trial, and found the cases shared similar crimes, punishments, type of victim, and modus operandi. It concluded that the cases were of the "same or similar character" under K.S.A. 22-3203.

We agree. The cases are very similar and do not merely have an overlap of the types or categories of crimes—they have "multiple commonalities." See *Smith-Parker*, 301 Kan. at 157-58. The crimes in all three cases were "'of the same general character, requiring the same mode of trial, the same kind of evidence, and the same kind of punishment.'" *State v. Barksdale*, 266 Kan. 498, 507, 973 P.2d 165 (1999) (quoting *State v. Hodges*, 45 Kan. 389, 392, 26 P. 676 [1891]). Because the cases are so similar, the district court did not err in finding the facts met the "same or similar character" condition precedent. See *Smith-Parker*, 301 Kan. at 157-58.

*Step 2*

Brazille's chief complaint is that the district court abused its discretion because consolidation unduly prejudices him. We focus, as Brazille does, on the prejudicial effect of admitting the evidence from each case under K.S.A. 2019 Supp. 60-455(d) in the consolidated case.

The State noted its intent to use the K.S.A. 2019 Supp. 60-455(d) propensity evidence and the district court ruled it would allow the State to present evidence of Brazille's propensity to commit sexual misconduct. The court found the evidence of Brazille's other alleged sexual misconduct to be relevant and probative, and that it would have admitted that evidence under K.S.A. 2019 Supp. 60-455(d) for that purpose. That statute permits evidence of the defendant's commission of another act or offense of sexual misconduct to be "considered for its bearing on any matter to which it is relevant and probative." K.S.A. 2019 Supp. 60-455(d). The district court thus found that if separate trials were held, evidence of each count in the other cases would have been admissible in each separate trial. We find no error in that ruling, and Brazille asserts none. Brazille thus would have had to confront the same evidence in separate trials of the charges arising from the attacks involving all three girls.

We agree that joinder of child sex crime cases may increase the risk of prejudice, under the common connotation of that word. But we measure prejudice here by a different standard—to determine whether joinder would deny Brazille a fair trial. As the *Coburn* court said, "to insure against prejudicial joinder under K.S.A. 22-3202(1), evidence resulting from separate charges improperly joined should not violate the permissible limits of K.S.A. 60-455 and if this occurs and the evidence would have been inadmissible in separate trials of the same charges, prejudice results." *State v. Coburn*, 38 Kan. App. 2d 1036, 1053, 176 P.3d 203 (2008). But here, the evidence was admissible

8

under K.S.A. 2019 Supp. 60-455 and would have been admissible in separate trials of the same charges.

The district court correctly recognized this potential for prejudice and properly instructed the jury to consider each charge separately. That instruction stated:  "Each crime charged against Nathan Brazille is a separate and distinct offense. You must decide each charge separately on the evidence and law applicable to it, uninfluenced by your decision as to any other charge." Thus, the jurors' consideration of the evidence on a particular charge was confined to the facts pertaining directly to that charge.

Kansas appellate courts have found this instruction "negates the inherently prejudicial effect of trying a person on multiple counts." *Cruz*, 297 Kan. at 1058; *State v. Myers*, 62 Kan. App. 2d 149, 163, 509 P.3d 563 (2022). And we assume that jurors follow the court's instructions. *State v. Thurber*, 308 Kan. 140, 194-95, 420 P.3d 389 (2018). Although the crimes were similar, the State presented the evidence from the three cases separately, the events in each case occurred on separate dates, and the jury was able to consider each charge separately on the evidence and law applicable to it. The instruction, coupled with the compartmentalization of the evidence, avoided the possibility of confounding the jury by scrambling the evidence of the joined cases.

Had Brazille faced three separate trials, he would not have benefited from this instruction, yet the same incriminating evidence would have been admitted against him. As a result, Brazille's prejudice may have been greater had he received separate trials:

> "Given the sweeping rule of admissibility in K.S.A. 2017 Supp. 60-455(d), a district
> court need not give the jurors a limiting instruction confining their consideration of the
> propensity evidence to a narrow purpose or point. *State v. Prine*, 297 Kan. 460, Syl. ¶ 4,
> 303 P.3d 662 (2013). The jurors in those hypothetical separate trials would have been
> free to consider the other crimes evidence for virtually any ground bearing on [the
> defendant's] guilt of the charged crimes against the particular victim. The district court

9

would not have given an instruction comparable to PIK Crim. 4th 68.060 confining the jurors' consideration of the evidence on a particular charge to the facts pertaining directly to that charge. As a result, [the defendant] would have been materially disadvantaged in separate trials compared to the consolidated trial he received." *Sumpter v. State*, No. 117,732, 2019 WL 257974, at *10 (Kan. App. 2019) (unpublished opinion).

We also note that the victims' testimonies during Brazille's trial were mostly consistent with what each victim had told law enforcement years before. Their testimony was relatively static over time. And the strength of any one case was comparable to that of the other two cases, presenting no opportunity for the State to bolster a weak case with evidence of a stronger one. And the record shows no reason for the jury to have found in Brazille's favor on some of the crimes, had they been considered at separate trials rather than together. So the strength and similarity of the State's evidence in each case underscores our finding that consolidation did not unduly prejudice Brazille.

We recognize that a jury in a consolidated case may choose to give greater credibility to the consistent testimony of three victims than if separate trials were had—then the jurors' credibility call would consist of one person's word against Brazille's. But on the other hand, consolidation does not necessarily have that effect. This is because, as our cases recognize, proof of a matter does not necessarily depend upon the greater number of witnesses, "since the testimony of the smaller number may be truthful and credible, and the testimony of the greater number may be discredited or untruthful." *Hughes v. Vossler*, 110 Kan. 279, 282, 203 P. 1107 (1922). See also *In re Cross' Estate*, 186 Kan. 590, 595, 352 P.2d 427 (1960) (stating the rule that an appellate court cannot pass on the credibility of witnesses or "set aside the finding of a jury based on conflicting testimony because of the greater number of witnesses who gave adverse testimony").

Brazille assumes that because the greater number of witnesses testified to similar facts, they are necessarily more credible than any one witness to the contrary. But that speculation is not warranted, as a jury may reach a decision that is contrary to the

testimony of a greater number of witnesses. Without Brazille pointing to something more specific as to how consolidation of the cases for trial prejudiced him in his situation, Brazille fails to meet his burden of showing that the district court abused its discretion in consolidating the cases for trial.

*Did the District Court Err in Denying Brazille's Motion for a New Trial Based on a Claim of Ineffective Assistance of Counsel?*

Brazille next contends that the district court erred in denying his motion for a new trial in which he alleged ineffective assistance of counsel.

When, as here, the district court conducts an evidentiary hearing on claims of ineffective assistance of counsel, we review the district court's factual findings for substantial competent evidence and the district court's legal conclusions de novo. See *Khalil-Alsalaami v. State*, 313 Kan. 472, 486, 486 P.3d 1216 (2021). Substantial evidence is such evidence that a reasonable person might accept as sufficient to support a conclusion. *State v. May*, 293 Kan. 858, 862, 269 P.3d 1260 (2012). This court does not reweigh evidence, pass on the credibility of witnesses, or resolve evidentiary conflicts. *State v. Sanders*, 310 Kan. 279, 294, 445 P.3d 1144 (2019).

*The Relevant Law*

Criminal defendants have the right to the effective assistance of an attorney during trial.

> "The Sixth Amendment to the United States Constitution guarantees that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence.' This right, deemed fundamental and essential to a fair trial, applies to the states through the Due Process Clause of the Fourteenth Amendment. The right to

counsel 'requires more than the presence of an attorney; it guarantees the right to effective assistance from the attorney.' [Kansas courts] have acknowledged that '[t]he purpose of the effective assistance guarantee "is simply to ensure that criminal defendants receive a fair trial."' [Citations omitted.]" *Khalil-Alsalaami*, 313 Kan. at 484-85.

This court analyzes claims of ineffective assistance of trial counsel under the two-prong test of *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), adopted by the Kansas Supreme Court in *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985). Under that test, the defendant bears the burden to show that defense counsel's performance was deficient and to show a reasonable probability that, absent defense counsel's errors, the result would have been different. *Khalil-Alsalaami*, 313 Kan. at 485.

Brazille argues that Quentin Pittman's failure to investigate and present evidence supporting Brazille's defense amounted to deficient attorney performance and prejudice under the Sixth Amendment. He also argues that an attorney's failure to obtain facts or perform an adequate investigation to make an informed decision renders any trial strategy inappropriate or ineffectual. And that "[b]ecause counsel had a duty to make a reasonable investigation, . . . the district court erred in finding that counsel's performance [was] competent and effective."

To establish deficient performance under the first prong, the defendant must show that defense counsel's representation fell below an objective standard of reasonableness. Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel must be highly deferential. *Khalil-Alsalaami*, 313 Kan. at 485. This court must strongly presume that defense counsel's conduct fell within the wide range of reasonable professional assistance; that is, the defendant must overcome the strong presumption that, under the circumstances, counsel's action might be considered sound trial strategy. 313 Kan. at 486.

12

"'[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'" *State v. Coones*, 301 Kan. 64, 74-75, 339 P.3d 375 (2014) (quoting *Strickland*, 466 U.S. at 690-91).

But counsel's alleged strategic decisions are not insulated from review when counsel lacks information necessary to make an informed decision due to an insufficient investigation. *State v. Butler*, 307 Kan. 831, 854, 416 P.3d 116 (2018).

When it comes to legal strategy, "[i]t is within the province of a lawyer to decide what witnesses to call, whether and how to conduct cross-examination, and other strategic and tactical decisions." *Thompson v. State*, 293 Kan. 704, 716, 270 P.3d 1089 (2011); see also *State v. Rivera*, 277 Kan. 109, 116-17, 83 P.3d 169 (2004) (finding criminal defendants are charged with deciding what plea to enter, whether to waive jury trial, and whether to testify, but strategical and tactical decisions like preparation, type of defense, and filing motions lie with defense counsel, who is not required to specifically consult with defendant first). "[T]he trial court, which observed counsel's performance and was aware of the trial strategy involved, is in a much better position to consider counsel's competence than an appellate court . . . [and] should be the first to make a determination of such an issue." *State v. Van Cleave*, 239 Kan. 117, 119, 716 P.2d 580 (1986). Brazille bears the burden to show that his trial counsel's alleged deficiencies did not result from strategy. See *Butler*, 307 Kan. at 854.

*Evidence from the Hearing*

Pittman and his licensed private investigator, Betsy Morss, testified. Morss testified she interviewed Brazille twice while she worked on the case from May to September 2019, spending an hour with him each time and 12 total hours on the case. She interviewed Brazille's girlfriend, Brown, and attempted to interview the alleged victims or their relatives. She also interviewed Brazille's first attorney, Kent Clark.

Pittman testified to his 19 years of experience and to his decision to hire Morss as a private investigator. He was under the impression there was an individual who had approached Clark and claimed he was the father of the first victim and that she had confessed that she had made up the allegations against Brazille. But Clark had not established the identity of that individual—such as by a driver's license—and thus Pittman lacked enough information to conduct an investigation. Morss could not locate this individual based on Clark's notes, nor could Brazille provide more information. Pittman did not believe asking the district court for more time to find the unknown individual would have helped Brazille because Pittman and Morss had spent months looking for him.

Pittman was able to exclude evidence of jail phone calls between Brazille and Brown and between Brazille and a prepubescent girl. Pittman visited Brazille in jail at least six or seven times, typically spending 30 minutes to an hour with him. Brazille told Pittman he did not commit the crimes because he was out of town at the time, though Pittman knew Brazille had already told police he was in town when the incidents occurred. Even so, because the complaints alleged a range of dates, evidence that Brazille was elsewhere on a specific date would not establish an alibi. And the more specific date in L.C.'s case matched the date of L.C.'s snapchat video which she claims captures Brazille speaking in the background. Pittman did not ask for more time even though the State held a preliminary hearing the morning of trial to amend the date in L.C.'s case

14

because he knew a change in date was coming, had investigated the claim, and had received discovery for it.

Pittman did not recall Brazille disagreeing with him about the trial or his trial strategy. He told Brazille if the State chose not to present the recordings of his interview with police then he would have to testify to present his defense to the jury. This is because in his interviews, Brazille's theory was that someone else did it or that it was an accidental touching. But Pittman advised Brazille not to testify if the State admitted the recordings. Pittman believed Brazille did not disagree with his suggestion. Pittman told the district court if Brazille had insisted on testifying, he would not stop him, but that he did advise him against it.

Brazille testified that Pittman had visited him only four times in jail and was always in a hurry. Brazille tried to show Pittman he was not always in Kansas when the events occurred. He had ATM bank statements showing he had withdrawn cash in different states, and Pittman could have contacted his family in those states to establish an alibi. Brazille told Pittman who the father was that Pittman and Morss said they could not find.

Brazille claimed Pittman did not cross-examine the victims at all, and he did not cross-examine Brown to the extent he should have. And on the second day of trial, Pittman asked Brazille's sister and mother to persuade him not to testify, and Brazille's mother made him promise he would not get up on the stand. On the last day of trial Brazille claimed he told Pittman he wanted to testify, but Pittman ignored his request. Brazille insisted he wanted to testify even though the State had introduced into evidence the statements he had made to law enforcement. And Brazille said Pittman never spoke to him about not testifying in that scenario.

15

*The First Prong—Performance*

The district court took the matter under advisement, and later found Brazille's claims were conclusory and non-specific and when more specific, they bordered on nonsensical. The district court made 13 findings under the first *Strickland* prong—performance, including:

- Pittman hired a licensed private investigator to look into the claims against Brazille;
- Pittman had 19 years of legal experience;
- Pittman visited Brazille seven times for between 30 and 60 minutes each, and a lawyer's time is more often spent developing the defense and investigating the facts of the case than visiting the defendant in jail;
- Pittman fully investigated Brazille's claims that he was out of town and determined the fact did not constitute a defense or an alibi;
- Pittman's testimony was more credible than Brazille's that he did not prevent Brazille from testifying;
- Pittman filed and argued appropriate pretrial motions, requested a mistrial during the trial, and successfully defended against the State's K.S.A. 60-455 pretrial motion, keeping out "factually damning evidence of the defendant's jail calls to a prepubescent girl in Oklahoma";
- Pittman's failure to locate a potentially exculpatory witness was "insufficient, inconsequential relative to the other evidence, and not particularly credible"; and
- Pittman's decision not to present the bank statement evidence benefited Brazille because they showed he abruptly left after the date of each alleged crime, and that the statements bolstered the young victims' vague timelines of when these acts occurred.

The district court also found that regardless of Pittman's representation, the outcome of the trial would not have been different because the State's evidence against Brazille was "very strong".

The district court found Pittman's testimony more credible on all instances of disagreement. And the record shows conflicting testimony on Pittman's investigation into Brazille's defense. Brazille essentially asks this court to reweigh the evidence and reassess credibility. But this court cannot do so. See *Sanders*, 310 Kan. at 294. And review of the testimony from the hearing shows substantial competent evidence supporting the district court's factual findings. See *Khalil-Alsalaami*, 313 Kan. at 486.

Brazille's argument that Pittman failed to investigate on his behalf or undermine the State's witnesses is unpersuasive. Pittman made every attempt to investigate Brazille's claimed defense and other avenues to undermine the State's evidence without undermining his client's previous statements to law enforcement. Pittman did not believe it was in Brazille's best interests to present Brazille's bank statements because: (1) they showed Brazille left shortly after each incident was alleged to have occurred for the first two victims; and (2) Brazille's leaving could be viewed as evidence of flight, which would not benefit Brazille. Morss tried to follow up on Brazille's suggested leads. She also tried to investigate the allegations by interviewing individuals involved in the cases but was unsuccessful in getting an interview. Pittman was unable to track down the individual who had approached Brazille's previous attorney with Brazille's alleged defense to one of the girls. Yet he made a significant effort to do so, as Morss and Pittman's testimony shows.

Pittman made a sound decision based on the conflicting evidence of Brazille's whereabouts at the time of the alleged incidents—as well as what tended to prove or disprove his defense. And reasonable professional judgment supports Pittman's limitations on the investigation into Brazille's defense. See *Butler*, 307 Kan. at 854.

17

Brazille could not give any identifying information about the unknown individual with alleged exculpatory information until the motions hearing when he stated a last name of "Simpson." Further, aside from the unknown individual whom Pittman tried to locate, Brazille did not suggest to the district court, or on appeal, whom Pittman should have called in Brazille's defense.

Although Brazille suggests Pittman failed to present witnesses to undermine the credibility of the allegations and support his defense, this is not an accurate characterization of what occurred. Pittman called Brown to testify to her disbelief of one of the victims and of the fact that two of the alleged incidents had occurred in her home. Pittman also presented testimony from Officer Zandler, who had interviewed L.C.'s mother, in an attempt to undermine L.C.'s version of events. And Pittman advocated for Brazille by cross-examining every victim, raising timely and appropriate evidentiary objections, and appropriately requesting a mistrial.

The facts support the district court's finding that Pittman adequately investigated Brazille's defense and the individuals involved. And in making its decision, the district court relied on the *Strickland* standard, as well as Kansas caselaw on ineffective assistance of counsel claims. Our review of caselaw supports the district court's legal finding that Pittman's representation did not fall below the objective standard of reasonableness. See *Khalil-Alsalaami*, 313 Kan. at 485.

*The Second Prong—Prejudice*

Although we need not reach the second prong, having found Pittman's performance adequate, we do so to underscore the fairness of Brazille's trial. Under the second prong, the defendant must show that defense counsel's deficient performance was prejudicial. To establish prejudice, the defendant must show with reasonable probability that the deficient performance affected the outcome of the proceedings, based on the

18

totality of the evidence. A reasonable probability is a probability sufficient to undermine confidence in the outcome. 313 Kan. at 486.

Brazille argues prejudice because if Pittman had presented witnesses to undermine the victims' testimony and credibility, and better supported Brazille's statements to law enforcement that someone else was abusing the victims, a different result of his trial would have been a reasonable probability.

The district court found no prejudice, stating, "The nature of the victims and the witnesses' testimony, their consistency, commonality and credibility were overwhelming." Our review of the totality of the evidence before the jury suggests the district court did not err in making this finding. This is because Brazille cannot persuasively show that, but for Pittman's alleged deficient representation, the result of the trial would have been different. See *Khalil-Alsalaami*, 313 Kan. at 486.

Each victim's testimony, though it may have differed slightly, largely reflected what each victim had told law enforcement years before. The victims testified to the areas on their bodies that Brazille had touched, the parts of Brazille's body that had touched them, what Brazille had meant to the victim or her family, and roughly how many times the touchings had occurred. Each victim was positive in identifying who had touched them. So even if the evidence was not overwhelming, it was consistent enough to support the convictions.

Put simply, Brazille cannot persuasively show a reasonable probability that any deficient performance affected the outcome of his trial. See *Khalil-Alsalaami*, 313 Kan. at 486. As a result, we affirm the district court's decision denying Brazille's motion for a new trial based on ineffective assistance of counsel.

Affirmed.

19