NOT DESIGNATED FOR PUBLICATION

No. 126,471

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JEFFREY A. BELAIRE,
*Appellant*.


MEMORANDUM OPINION


Appeal from Jackson District Court; NORBERT C. MAREK, JR., judge. Submitted without oral argument. Opinion filed December 12, 2025. Affirmed.

*Lindsay Kornegay,* of Kansas Appellate Defender Office, for appellant.

*Tyler W. Winslow,* assistant solicitor general, and *Kris W. Kobach,* attorney general, for appellee.


Before WARNER, C.J., GARDNER and HURST, JJ.


HURST, J.: The State charged Jeffrey Alan Belaire with six counts stemming from two separate routine vehicle stops where officers discovered drugs and related paraphernalia in his car. A jury ultimately convicted Belaire of four of those charges: possession of methamphetamine, possession of marijuana, possession of drug paraphernalia, and driving without a license. Belaire appeals, claiming the district court erred by consolidating the two cases for trial; that there was insufficient evidence to sustain his conviction for methamphetamine possession; and that he was deprived of his right to a fair trial due to prosecutorial error and cumulative error.

1

Finding no error, Belaire's convictions are affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

On the afternoon of May 25, 2020, a Jackson County Sheriff's Office Deputy conducted a traffic stop on a white Honda after determining the Honda's license plate was registered to a different car. Belaire was in the driver's seat and his significant other was in the front passenger seat. After approaching, the deputy asked for Belaire's license, which Belaire did not have, but he provided the deputy with his Prairie Band Potawatomi identification card. While speaking with Belaire and his significant other, the deputy said he smelled marijuana in the car, so the deputy removed and cuffed both occupants and searched the car.

The deputy's search—which is discussed more below—turned up relatively small amounts of methamphetamine, marijuana, and related drug paraphernalia. Thereafter, the deputy read Belaire and his significant other their *Miranda* rights and spoke to them separately about the contraband found in the car. Belaire's significant other told the deputy that the items belonged to her, but Belaire said they belonged to him. As a result, the State charged Belaire with possession of methamphetamine, possession of marijuana, and possession of drug paraphernalia in case 20CR236.

About 11 months later, on April 28, 2021, and before Belaire's prior case was finished, he was stopped again. A different deputy with the Jackson County Sheriff's Office conducted a traffic stop on Belaire's Chrysler 300 because he mistakenly believed the car's windows were tinted too darkly. The deputy approached the car; Belaire was in the driver's seat and his significant other was in the front passenger seat, similar to the stop the year before. Belaire provided the deputy with a Prairie Band Potawatomi identification card. While speaking with Belaire and his significant other, the deputy said he smelled marijuana in the car and then searched the car. At that time, Belaire's

2

significant other handed an officer a used pill bottle containing marijuana. During his search, the deputy discovered a straw containing methamphetamine in the car's glove box. The deputy then read Belaire and his significant other their *Miranda* rights and spoke with them about what he found. Both stated they did not know the origin of the straw but admitted using methamphetamine a few days prior. The State ultimately charged Belaire with possession of methamphetamine, possession of drug paraphernalia, and driving without a valid driver's license in case 21CR272.

The district court conducted a preliminary hearing and arraignment for both cases. At the arraignment hearing, the district court proposed trying both cases the same day. Belaire's trial counsel responded by saying, "I would actually ask that they not be consolidated for trial." The district court indicated its understanding of counsel's position but ruled it was consolidating the cases. The district court also told counsel to "[f]ile your motion." Belaire never filed a motion opposing the district court's consolidation of the cases.

Before jury selection on the day of trial, the district court again addressed consolidation of the cases, explaining its decision to consolidate as follows:

> "The Court prepared the instructions combining the two cases, and those were distributed sometime ago. So I just want to be clear that I consciously combined these for trial. I'll acknowledge that one happened in May of 2020, and one in April, 2021. The charges are virtually identical, particularly the top charge:  Methamphetamine in both cases, paraphernalia in both cases. The same people were in the vehicle, the defendant and [his significant other] were the only people in the vehicle at those times. There were both car stops involving the smell of marijuana. And for that reason the Court set these to run together.

Belaire's attorney objected to the consolidation of the two cases, noting their disparate times and events:

"Judge, since we are on the record, and I think we are in the concurrent state of trial, I was not—as the court is aware, I was not part of the original pretrial hearing in the matter to combine. I think it was decided long before I was on board. I would lodge an objection to a combined trial just simply based on the separation of time of the two traffic stops. and I understand the Court has already made its ruling on that. I would like to just make clear that objection."

The trial proceeded with charges stemming from both the May 2020 incident and the April 2021 incident. Therefore, Belaire faced charges of possession of methamphetamine, possession of marijuana, and possession of drug paraphernalia from the May 2020 incident; and then from the April 2021 incident he faced charges for possession of methamphetamine, possession of drug paraphernalia, and driving without a valid driver's license.

At the consolidated trial, the deputy involved in the first traffic stop testified about the May 2020 search and explained what was found:

"So on the front passenger floorboard, I found a box that had a small, black digital scale. It had rolling papers, a metal grinder with jar of green vegetation remnants in it, a small plastic baggie, and a set of metal tools. There was also located a Crown Royal bag on that floorboard. Inside that, there was a orange cardboard box that was held shut with a hair-tie or a rubber band of some sort. Inside that box was a small clear glass a smoking pipe that had a white residue and some burnt residue on it. There was a glass vial and an ink pen, too. Inside the Royal bag, there was also another box with b1ack— there was a blue pen inside of that. And inside the bandana, there was glass marijuana smoking pipe, a plastic container, and that had a baggie with some dried green vegetation, another container with some burnt vegetation, and then there was a pink and purple silicone pipe. There was also a black plastic tube that stated 'Kaviar, Indica, 1.5G' on it. That had a marking indicating that it had THC within the ingredients. But inside that container was just like a normal with THC or marijuana where I located it with a bunch of marijuana cigarette butts that had already been smoked. And then there was a Swisher-Sweet wrapper inside the bag as well, and it had some green vegetation."

4

The deputy then testified that Belaire "told me the items were his." The deputy's body camera footage was also admitted into evidence, and the deputy can be heard asking Belaire if the "weed" found in the car was his—"It's yours?" the deputy asked. In response, Belaire nods his head affirmatively. The deputy then asked to whom the "meth pipe" that was found in the Crown Royal bag belonged—Belaire responded "it'd be mine." The deputy then confirmed that Belaire admitted it was his and Belaire again nodded affirmatively. The deputy then asked Belaire when he last smoked methamphetamine, to which Belaire said, "it's been some days." Belaire also admitted to smoking marijuana earlier that morning.

On direct examination at trial, Belaire's attorney questioned Belaire about the statements admitting the pipe was his. Belaire testified he did not recall making that statement. When counsel asked Belaire why he would have made such statements, Belaire testified, "I just felt like I would take the charge. I didn't want my significant other to go to jail."

In closing argument, the prosecutor made the following remark about the amount of evidence and Belaire's defense:

> "The sheer amount of drug paraphernalia that was in his car, there's no way Mr. Belaire didn't know it was in his car. The—as far as maybe not knowing the meth pipe is in there, that's not—that's not really a defense; I didn't know it was in there with the rest of my drug paraphernalia. Of course he did."

The jury convicted Belaire of all three crimes charged in case 20CR236 arising from the May 2020 traffic stop: possession of methamphetamine, possession of marijuana, and possession of drug paraphernalia. However, the jury only convicted Belaire of driving without a valid license in case 21CR272 arising from the April 2021 traffic stop. The jury did not convict Belaire of the drug and paraphernalia charges from

the April 2021 incident. The district court sentenced Belaire to a controlling probation term of 18 months with an underlying prison term of 24 months.

Belaire appeals.

## DISCUSSION

Belaire appeals his convictions arguing that: (1) the district court erred in consolidating his cases for trial; (2) there was insufficient evidence to support his conviction for possession of methamphetamine; (3) he was deprived of the right to a fair trial because of prosecutorial error; and (4) cumulative error deprived him of the right to a fair trial.

## I. THE DISTRICT COURT DID NOT ERR IN CONSOLIDATING BELAIRE'S CASES

An appellate court reviews a district court's decision to consolidate cases for trial using a three-step analysis. In the first step, this court determines whether consolidation was legally permissible under the conditions permitting consolidation in K.S.A. 22-3203. This inquiry requires this court to review the district court's factual findings for substantial competent evidence to determine whether the factual conditions exist permitting consolidation. It then reviews the district court's legal conclusion based on those facts de novo. In the second step, this court reviews the district court's discretionary decision to permit consolidation for an abuse of discretion. Third and finally, if this court finds an error in either of those steps, it must then determine whether that error resulted in prejudice, which requires determining whether it affected a party's substantial rights. *State v. Ross*, 320 Kan. 448, 458-67, 570 P.3d 28 (2025).

Here, Belaire was charged with crimes in two separate cases through two separate complaints. A district court has discretion to consolidate cases by ordering "two or more

complaints, informations or indictments against a single defendant to be tried together if the crimes could have been joined in a single complaint, information or indictment." K.S.A. 22-3203. So, this court must determine whether Belaire's charges could have been brought in a single complaint. Multiple crimes may be charged in the same complaint if they "are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." K.S.A. 22-3202(1).

Belaire argues the district court erred regarding both its factual findings and its ultimate decision that consolidation was appropriate.

*Belaire Failed to Object to the Timing or Content of the District Court's Factual Findings*

Belaire first argues the district court erred in failing to make a record of its factual findings and legal conclusions *before* consolidating the cases. At the pretrial hearing in December 2021, the district court told the parties it was consolidating the cases but did not give its reasoning. At that time, Belaire objected to the consolidation, and the court invited Belaire to file a motion in opposition. Belaire never filed that motion. Moreover, Belaire did not object to the district court's failure to state its factual findings or legal conclusions supporting consolidation on the record. Thereafter, months later at the trial, the district court restated its decision to consolidate and at that time explained its factual findings and legal conclusions on the record.

Belaire does not object to the court's ultimate factual findings made on the record at trial. That is, it does not appear that he contends that the court's ultimate factual findings are unsupported, inaccurate, or insufficient. Rather, the first claim is actually a legal argument that the district court was required to make factual findings in the record at the pretrial hearing before making its consolidation determination. Belaire claims the

7

failure to put its factual findings and legal conclusions in the record at the pretrial hearing—when the district court made the initial consolidation decision—is fatal.

However, to preserve this issue for appeal, Belaire must have objected to the district court's allegedly inadequate factual findings or legal conclusions. See *State v. Sanders*, 310 Kan. 279, 290, 445 P.3d 1144 (2019). Generally, this objection is required to ensure a sufficient record on appeal. See *In re Marriage of Meek*, 320 Kan. 313, 316, 567 P.3d 252 (2025) (quoting *In re Marriage of Bradley*, 258 Kan. 39, 49–50, 899 P.2d 471 [1995]) ("We have repeatedly emphasized that the purpose of requiring an objection to 'findings of fact and conclusions of law,' i.e. the district court's ruling, is to ensure a sufficient factual record on appeal.").

Regardless, the failure to object typically does not prohibit further review of the ultimate decision because the appellate court can simply "presume . . . the district court made the factual findings necessary to support its decision." See *State v. Gaither*, 283 Kan. 671, 686, 156 P.3d 602 (2007) (proceeding directly to the legal conclusion without addressing whether the factual findings were supported by substantial competent evidence because the defendant failed to object to the district court's lack of factual findings). However, if a party objects to the district court's factual findings for a reason other than sufficiency of the evidence—which appears to be the case here—that legal objection must first be raised to the district court to be preserved for appellate review. *In re Marriage of Meek*, 320 Kan. at 316 (citing *In re Marriage of Bradley*, 258 Kan. at 49-50).

It is undisputed that Belaire did not object to the district court's failure to make a record of its factual findings and legal conclusions at the pretrial hearing. If Belaire's argument is a legal one—that the district court is not permitted to put its factual findings in the record *after* making its consolidation decision—rather than a sufficiency argument, then it is not preserved for appeal. See *Shelton-Jenkins v. State*, 317 Kan. 141, 144, 526

8

P.3d 1056 (2023) (issue raised for first time on appeal is unpreserved and not reviewable). Moreover, Belaire does not argue an exception suggesting this court should review this unpreserved claim. If Belaire's argument is more akin to a sufficiency argument—that the lack of factual findings at the pretrial hearing were insufficient to support the consolidation decision at that time—then Belaire is similarly without recourse because his failure to object at the time permits this court to presume the court made the necessary findings. *Gaither*, 283 Kan. at 686. Moreover, the court later made factual findings at trial about which Belaire does not question the sufficiency. Accordingly, Belaire's failure to object to the timing of the district court's factual findings is fatal to the claim no matter how it is viewed.

*The District Court Did Not Err in its Application of K.S.A. 22-3202*

Belaire next argues the district court erred in its legal conclusions and thus consolidation was not supported by the record. On the first day of trial, the district court addressed consolidation, acknowledging the gap in time between the two underlying incidents but noting that the charges "are virtually identical." The district court pointed to the similarities between the two incidents:  the same two individuals in the car; both involved a car stop; and both included the alleged smell of marijuana prompting the searches for drugs. Thus, the district court relied on the same or similar nature of the two incidents to support its decision to consolidate the cases into one trial. K.S.A. 22-3202(1).

At trial, Belaire objected to consolidation of the cases but only referenced the lack of temporal connection—the almost one-year gap between the two incidents. In his brief, Belaire also argued the lack of connection because the State needed to rely on different witnesses, particularly two different law enforcement officers, for the separate incidents. Belaire is right that there is no evidence that the two cases occurred as part of the same act or transaction or were part of a common scheme or plan. However, the district court did not consolidate the cases under those theories. Consolidation is permitted under any

9

one of the criteria identified in K.S.A. 22-3202(1)—the court need not find they all apply. Therefore, the district court only needed to show that the cases had the same or similar character.

The two traffic stops were remarkably similar. In both cases Belaire drove with his significant other as a passenger. In both cases, Belaire was stopped for a routine traffic violation and the investigating officers in each instance said they smelled marijuana, which the State claimed permitted the subsequent search of Belaire's car. Belaire does not question the reasonableness of these searches, and they are not addressed here. In both instances the officers found small amounts of drugs and associated drug paraphernalia. In both cases Belaire failed to produce a valid driver's license and made admissions regarding his drug use. Moreover, the charges in both cases required trial by jury with the same type of evidence and could result in the same type of punishment— incarceration. See *State v. Ritz*, 305 Kan. 956, 964, 389 P.3d 969 (2017) (consolidation was appropriate where the charges overlapped greatly, shared factual similarities, required trial by jury, and could result in incarceration).

In arguing consolidation was an error, Belaire relies heavily on a decision from a panel of this court that found the district court erred when it denied a motion to sever the defendant's sexual exploitation charge from six charges of aggravated indecent liberties with a child. See *State v. Coburn*, 38 Kan. App. 2d 1036, 1042, 176 P.3d 203 (2008). Belaire points to that court's finding that the State could prove the sexual exploitation charge, which involved a review of Coburn's computer activity, without using any of the evidence necessary for the aggravated indecent liberties charges, which required victim testimony. Belaire claims his cases are like *Coburn* because the two incidents required testimony from different law enforcement witnesses.

However, *Coburn* is distinguishable. First, in this case, Belaire faced the same charges from the two separate incidents. While they required different evidence and

witnesses (not the same drugs, paraphernalia, or law enforcement officers), they did not require different types of evidence, witnesses, or experts. Both cases involved the same conduct—possession of illegal drugs and paraphernalia—which required the arresting officer's testimony and evidence verifying the substances found were illegal drugs. That is unlike *Coburn* where the panel explained that the charges did "not belong to the same class of crimes." 38 Kan. App. 2d at 1046. Second, the offenses in *Coburn* involved different victims that suffered different types of harm. Third, in *Coburn* the severity of the crimes was different while here they are the same. The *Coburn* decision is simply inapplicable here.

Finally, the gap in time between the two incidents—almost a year—does not prevent consolidation. The Kansas Supreme Court has routinely held consolidation appropriate even when the underlying incidents occurred more than a year apart. See, e.g., *State v. Crosby*, 312 Kan. 630, 634, 479 P.3d 167 (2021) (finding crimes of a similar character when incidents separated by 13 months); *State v. Cruz*, 297 Kan. 1048, 1056-57, 307 P.3d 199 (2013) (17 months); *State v. Cromwell*, 253 Kan. 495, 511-12, 856 P.2d 1299 (1993) (four years).

The district court did not err in its legal conclusion that K.S.A. 22-3202(1) permitted consolidating the cases for trial because they were of the same or similar character. Belaire does not argue that the district court then abused its discretion in consolidating the cases once it was statutorily permitted to do so, and he has accordingly waived that issue. See *State v. Meggerson*, 312 Kan. 238, 246, 474 P.3d 761 (2020) ("Issues not briefed or not adequately briefed are deemed waived or abandoned.") Finding no error, this court need not address whether consolidation of the cases prejudiced Belaire. Accordingly, the district court's consolidation decision is affirmed.

11

II. SUFFICIENT EVIDENCE EXISTED TO FIND BELAIRE GUILTY OF POSSESSION OF METHAMPHETAMINE

Belaire claims there was insufficient evidence to support his conviction for possession of methamphetamine because he did not have exclusive possession of the car where officers found the drugs, and his mere presence was insufficient. Belaire was charged with possession of methamphetamine under K.S.A. 2019 Supp. 21-5706(a), which provided that: "It shall be unlawful for any person to possess any opiates, opium or narcotic drugs, or any stimulant designated in K.S.A. 65-4107(d)(1), (d)(3) or (f)(1), and amendments thereto, or a controlled substance analog thereof." See also K.S.A. 65-4107(d)(3) (designating methamphetamine as a controlled substance). "Possession" was defined as "having joint or exclusive control over an item with knowledge of or intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control." K.S.A. 2019 Supp. 21-5111(v).

Therefore, the issue is whether there was sufficient evidence to show that Belaire exclusively or jointly knowingly or intentionally kept the methamphetamine in the car. In a challenge to the sufficiency of the evidence, this court must review the evidence in the most favorable light to the State "to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt." *State v. Mendez*, 319 Kan. 718, 723, 559 P.3d 792 (2024). In doing so, this court does not reweigh the evidence or reassess witness credibility. Reversing a guilty verdict for lack of sufficient evidence requires a finding that "the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt." *State v. Zeiner*, 316 Kan. 346, 350, 515 P.3d 736 (2022).

The evidence supporting a finding that Belaire possessed methamphetamine during the 2020 stop included Belaire's admission. The deputy testified that Belaire admitted to him that the methamphetamine pipe was his. Additionally, the jury viewed

12

the deputy's body camera footage on which Belaire can be seen making that admission. At trial, Belaire did not deny that he told the deputy the pipe containing methamphetamine was his—but he testified that his admission was false. Belaire claimed at trial that he admitted to owning the pipe to protect his significant other. In finding Belaire guilty of possession, the jury clearly did not find his testimony credible. While it could be true that the pipe was not Belaire's as he said at trial, there was evidence contradicting that trial testimony, and the jury was permitted to weigh the competing evidence and decide. This court does not reassess witness credibility determinations in reviewing challenges to the sufficiency of the evidence. *State v. Spencer*, 317 Kan. 295, Syl. ¶ 4, 527 P.3d 921 (2023). The jury is also permitted to make reasonable inferences from the available evidence. *State v. Strong*, 317 Kan. 197, 206, 527 P.3d 548 (2023).

Viewing the evidence in the light most favorable to the prosecution, a rational fact-finder could have relied on the deputy's testimony and body camera footage to find beyond a reasonable doubt that—despite Belaire's later recantation—he possessed the methamphetamine pipe found during the May 2020 stop. Thus, sufficient evidence supported Belaire's conviction for possession of methamphetamine.

## III. BELAIRE WAS NOT DEPRIVED OF HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL DUE TO PROSECUTORIAL ERROR OR CUMULATIVE ERROR

Belaire claims the prosecutor committed reversible error by misstating the law during closing argument by stating that Belaire lacked a defense to the charges:

> "The sheer amount of drug paraphernalia that was in his car, there's no way Mr. Belaire didn't know it was in his car. *The—as far as maybe not knowing the meth pipe is in there, that's not—that's not really a defense*; I didn't know it was in there with the rest of my drug paraphernalia. Of course he did." (Emphasis added.)

13

Belaire argues that his lack of knowledge of the methamphetamine pipe was a valid defense to the possession charge, and thus the prosecutor's statement otherwise misstated the law.

The Due Process Clause of the United States Constitution guarantees defendants the right to a fair trial, which includes a trial free from prejudicial prosecutorial error. See *State v. Sherman*, 305 Kan. 88, Syl. ¶ 1, 5, 378 P.3d 1060 (2016). This court applies "a two-step analysis to evaluate claims of reversible prosecutorial error," first identifying any error and second determining if that error impermissibly prejudiced the defendant. 305 Kan. 88, Syl. ¶ 6.

First, in assessing whether a prosecutorial error occurred, this court must determine whether the prosecutor's statements fell "outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial." *Sherman*, 305 Kan. 88, Syl. ¶ 7. Second, if the prosecutor's statements were in error, this court must determine "whether the error prejudiced the defendant's due process rights to a fair trial." 305 Kan. 88, Syl. ¶ 7; *State v. Brown*, 316 Kan. 154, Syl. ¶ 2, 513 P.3d 1207 (2022). This prejudice analysis is done under the traditional constitutional harmlessness standard where the error is harmless if the State proves there is no reasonable possibility that the error contributed to the verdict. *Sherman*, 305 Kan. 88, Syl. ¶ 8 (citing *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 [1967]). This is a fact-specific inquiry requiring this court to "consider any and all alleged indicators of prejudice, as argued by the parties, and then determine whether the State has met its burden—i.e., shown that there is no reasonable possibility that the error contributed to the verdict." 305 Kan. 88, Syl. ¶ 10.

Although Belaire concedes he did not contemporaneously object to the prosecutor's allegedly erroneous statement during closing argument, such objection is not required to preserve claims of prosecutorial error during closing argument for appellate

14

review. *State v. Bodine*, 313 Kan. 378, 406, 486 P.3d 551 (2021). Among other things, prosecutorial error occurs when a prosecutor misstates the law or facts in closing argument. *State v. Willis*, 319 Kan. 663, 670–71, 557 P.3d 424 (2024). However, prosecutors are permitted wide latitude, and the challenged statement must be reviewed in context to determine whether an error occurred. See *State v. Ross*, 310 Kan. 216, Syl. ¶ 1, 445 P.3d 726 (2019) ("In determining whether a particular statement falls outside of the wide latitude given to prosecutors, the court considers the context in which the statement was made, rather than analyzing the statement in isolation.").

Here, the challenged statement was made during the prosecutor's rebuttal closing argument in response to the defense counsel's admonition that the jury should not convict in the 2021 case just because they believed Belaire was guilty of some charges in the 2020 case. The defense counsel had argued that Belaire "didn't know there was methamphetamine in that car," during the 2021 stop. In its rebuttal, the State immediately addressed those issues and argued that because of "[t]he sheer amount of drug paraphernalia that was in his car" it was not believable that Belaire was unaware of the methamphetamine pipe that contained small amounts of methamphetamine. The prosecutor was drawing an inference between the amount of drugs and paraphernalia and Belaire's knowledge of the pipe, which is permissible. *State v. Hall*, 292 Kan. 841, Syl. ¶ 3, 257 P.3d 272 (2011) ("In closing argument, the prosecutor may draw reasonable inferences from the evidence.").

"A prosecutor is given wide latitude in the language and the manner of presentation of closing argument as long as the argument is consistent with the evidence." *Hall*, 292 Kan. 841, Syl. ¶ 4. While the prosecutor's argument could and likely should have been more precise, this court cannot say the statement ventured beyond the wide latitude permissible in closing argument.

Finding no prosecutorial error associated with this statement, this court need not address whether the comment prejudiced Belaire. However, in an effort for completeness—this court finds that the statement did not prejudice Belaire. First, the jury instructions provided accurate definitions for knowledge and intent, which mitigated any potential prejudice from the prosecutor's statement. Thus, even if the jury misunderstood the prosecutor's statement to be a statement of the law, in order to apply the law as stated by the prosecutor the jury would have had to ignore the jury instructions that accurately stated the law. Second, there was strong evidence of Belaire's knowledge and/or intent made through his own admissions. Finally, the jury acquitted Belaire in the drug possession charges for the 2021 incident, demonstrating that they carefully considered the evidence and the applicable legal standards. The verdict, given the evidence, shows that the prosecutor's statement did not affect the juror's understanding of the State's burden or Belaire's applicable defenses.

Lastly, Belaire claims that cumulative error deprived him of a fair trial. Cumulative trial errors, when considered together, may impact a defendant's ability to receive a fair trial. Nevertheless, cumulative error cannot occur when the defendant fails to establish any error. *State v. Gallegos*, 313 Kan. 262, Syl. ¶ 10, 485 P.3d 622 (2021). Having found no trial errors, there can be no cumulative error.

CONCLUSION

Although Belaire's charges stemmed from two separate incidents, the district court did not err in consolidating Belaire's cases for trial because the cases were of the same or similar character. Additionally, there was sufficient evidence to support Belaire's conviction for possession of methamphetamine in the May 2020 stop, and no trial or prosecutorial errors deprived him of the right to a fair trial.

Affirmed.

16